

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-15-1997

# Harrison v. Nissan Motor Corp

Precedential or Non-Precedential:

Docket 95-1300

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Harrison v. Nissan Motor Corp" (1997). *1997 Decisions.* Paper 84.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/84

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 95-1300
_____

FANNIE HARRISON,

Appellee

v.

NISSAN MOTOR CORPORATION IN U.S.A.,

Appellant

_____

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. Civ. No. 94-cv-06791

_____

Argued:  February 9, 1996
Opinion Filed: October 9, 1996
Panel Rehearing Granted and Opinion Vacated: November 4, 1996

Reargued: December 17, 1996

BEFORE: BECKER, ROTH and MCKEE, Circuit Judges.

(Filed: April 15, 1997)

JOHN E. HALL, ESQUIRE
ALFRED S. PELÁEZ, ESQUIRE (ARGUED)
BRIAN K. PARKER, ESQUIRE
Pietrangallo, Bosick & Gordon
One Oxford Centre
38th Floor
Pittsburgh, PA  15219

Attorney for Appellant

SAMUEL B. FINEMAN, ESQUIRE
GLENN I. GERBER, ESQUIRE
CRAIG THOR KIMMEL, ESQUIRE (ARGUED)
ROBERT M. SILVERMAN, ESQUIRE
Kimmel & Silverman
30 E. Butler Pike
Ambler, PA 19002

Attorney for Appellee

_____

1

BECKER, Circuit Judge.

This appeal arises from a civil suit based on diversity jurisdiction brought by appellee, Fannie Harrison ("Harrison"), against appellant, Nissan Motor Corporation in U.S.A. ("Nissan"), seeking damages for alleged defects in the 1994 Nissan Sentra that Harrison purchased on July 11, 1994. Nissan moved to dismiss the complaint for failure to "first resort" to the informal dispute resolution procedure provided by Nissan pursuant to the Pennsylvania Automobile Lemon Law, 73 P.S. § 1951 et seq. (Purdon 1993). The district court denied the motion, and also denied Nissan's subsequent motion for reconsideration. Nissan has appealed from both orders.

Harrison submits that, because the district court has not entered a final order, the appeal should be dismissed for lack of appellate jurisdiction. Nissan rejoins that we have appellate jurisdiction under § 16 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16, which allows an interlocutory appeal of an order denying a motion to compel arbitration under the FAA. Nissan argues that appellate jurisdiction lies under this provision because its motion to dismiss was a surrogate for a motion to compel arbitration. Harrison takes issue with this characterization, and also contends that the FAA does not apply to the informal ADR procedure provided by Nissan under the Lemon Law. We need not decide if Nissan's motion to dismiss is the

functional equivalent of a motion to compel arbitration because we agree with Harrison's latter contention, and hence we will dismiss the appeal for lack of appellate jurisdiction.

**I.**

Under the Pennsylvania Automobile Lemon Law ("Lemon Law"), "any purchaser of a new motor vehicle who suffers any loss due to nonconformity of such vehicle as a result of the manufacturer's failure to comply with this act may bring a civil action." 73 P.S. § 1958. However, the law requires the claimant to "first resort" to any alternative dispute resolution procedures that the manufacturer has established before initiating litigation. Id. § 1959.[1]

By the terms of the Lemon Law, id., before a consumer must "first resort" to it, the alternative dispute resolution procedure provided by the manufacturer must comply with the Federal Trade Commission ("FTC") regulations, 16 C.F.R. pt. 703, promulgated under a cognate federal act, the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq. The most important of

---

1. The statute provides:
If the manufacturer has established an informal dispute settlement procedure which complies with the provisions of 16 C.F.R. Pt. 703, as from time to time amended, the provisions of [73 P.S. § 1958] shall not apply to any purchaser who has not first resorted to such procedure as it relates to a remedy for defects or conditions affecting the substantial use, value or safety of the vehicle. The informal dispute settlement procedure shall not be binding on the purchaser and, in lieu of such settlement, the purchaser may pursue a remedy under [§ 1958].
73 P.S. § 1959.

3

these regulations for purposes of the case at bar requires alternative dispute resolution "mechanisms" to render a decision within forty days of notification of the dispute. Id. § 703.5(d). The regulations provide that a "requirement that a consumer resort to the Mechanism prior to commencement of an action . . . shall be satisfied 40 days after notification to the Mechanism of the dispute or when the Mechanism completes all of its duties under . . . this section, whichever occurs sooner." Id. § 703.5(i).[2]

Nissan has contracted with the Better Business Bureau ("BBB") to provide a mechanism, the BBB "Auto Line," that will satisfy the alternative dispute resolution provisions of both the Pennsylvania Lemon Law and the Magnuson-Moss Warranty Act. The contract between Nissan and the BBB provides that the Auto Line program will provide arbitration services that comply with the FTC requirements described above.[3]

---

2. This provision refers explicitly only to the "resort" requirement of §110(d) of the Magnuson-Moss Warranty Act. We find, however, that this provision also applies to the "first resort" requirement of the Lemon Law. As explained in the text, the FTC regulations were promulgated only with the Magnuson-Moss Act in mind, but the Lemon Law requires that qualifying mechanisms comply with the FTC regulations. Hence, these regulations apply to Lemon Law ADR even if they reference only the Magnuson-Moss Act explicitly.

3. Harrison contends that the BBB Auto Line program does not comply with 16 C.F.R. pt. 703; inter alia, she relies on a letter written by a FTC investigator. Nissan responds that the investigator's letter is taken out of context and has no relevance to the point for which Harrison submits it. Nissan also submits that, at all events, the BBB Auto Line informal dispute resolution mechanism is used nationally by several automobile manufacturers, and in virtually every state, and that

4

The warranty that accompanies Nissan's vehicles describes the BBB Auto Line as a remedy available to consumers who are dissatisfied with their vehicles' performance.[4] The warranty informs consumers how to register their complaints with the BBB Auto Line and what information to provide. It also explains that the BBB Auto Line has both a mediation and an arbitration component. If the complaint cannot be mediated, the consumer can present the matter to an impartial person or a three-person arbitration panel. The arbitrators' decision is not binding unless the consumer accepts it as binding. While the warranty states that resort to the BBB Auto Line is completely voluntary, it also notes that some state laws require resort to the program before filing a lawsuit.

Harrison, through counsel, sent to the BBB Auto Line a request for arbitration, dated August 16, 1994, which claimed that her 1994 Nissan Sentra did not comply with the warranty. The Sentra allegedly had a faulty engine, air conditioner, and steering system, as well as other defects. Harrison requested a

(..continued)
all such mechanisms are audited "at least annually, to determine whether the Mechanism and its implementation are in compliance with this part." Id. § 703.7(a). It points out that the attorney charged with insuring that the BBB Auto Line is in compliance with the FTC regulations has testified that neither the FTC nor any state has ever found the BBB Auto Line program to be wanting. In the final analysis, however, that question is for the FTC, and not this Court, to decide.

4. A copy of the warranty was submitted after this Court asked the parties to supplement the record pursuant to Fed. R. App. P. 10(e). This document was not in the record before the district court.

5

refund of her purchase price, approximately nineteen thousand dollars. After forty days had passed without a response, at least according to Harrison, she filed a diversity-based civil suit, 28 U.S.C. § 1332, against Nissan in the District Court for the Eastern District of Pennsylvania. Harrison's five-count complaint pled a Pennsylvania Lemon Law claim, a Magnuson-Moss Warranty Act claim,[5] a Uniform Commercial Code claim, a detrimental reliance claim, and a Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claim. Harrison asserts that her UTPCPL claim, under which she could be awarded three times the amount recoverable under the Lemon Law (the purchase price of the car), see 73 P.S. § 1955 (Purdon 1993); id. § 201-9.2, allows her to satisfy the amount in controversy requirement of 28 U.S.C. § 1332.

Nissan moved to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). It argued that the Lemon Law claim should be dismissed because the "first resort" provision requires that a claimant fully exhaust the available ADR procedures, in this case the BBB Auto Line, before filing suit. Because, according to Nissan, the BBB Auto Line had responded to Harrison's request for arbitration and she had failed to take action, she had not satisfied this

---

5.    Although the Magnuson-Moss Act is a federal law, a private enforcement action cannot be brought in federal court unless the value of all of the claims in the suit is at least $ 50,000. 15 U.S.C. § 2310(d)(1)(B) and (d)(3).

6

exhaustion requirement. In Nissan's submission, if the Lemon Law claim was dismissed, Harrison could no longer assert an UTPCPL claim, and thus the amount in controversy would no longer meet the $50,000 statutory requirement. Under these circumstances, the district court would lack subject matter jurisdiction.

In response, Harrison contended that there is no such exhaustion obligation, reasoning that the Lemon Law is a consumer statute that imposes burdens on manufacturers, but not on claimants, and that the regulations promulgated under the Magnuson-Moss Warranty Act clearly imply that the customer need only make the initial notification. Harrison repeated her allegation that she had never received a response from the BBB Auto Line.

The district court denied the motion to dismiss, reasoning that, taking the facts of the complaint as true, Harrison had sufficiently resorted to the alternative remedies under the Lemon Law before filing her complaint. In doing so, it relied upon the opinion in Polischchuk v. Nissan Motor Corp. in U.S.A., Civ. No. 94-6771, 1995 WL 94798 (E.D. Pa. Mar. 6, 1995). In Polischchuk, the court held that the Lemon Law did not require exhaustion of the mechanism prior to filing suit, and that the "first resort" requirement was satisfied by the plaintiffs' allegations that they had forwarded a request for arbitration to the BBB Auto Line and had received no response.

7

Id. at *2.[6]

Nissan moved for reconsideration, and in the alternative, to treat the motion to dismiss as a motion for summary judgment. In its motion, Nissan again represented that Harrison had failed to comply with the "first resort" requirement of the Lemon Law. Nissan attached as an exhibit an affidavit from the director of the Eastern Pennsylvania BBB Auto Line Program who stated that, a few days after receiving Harrison's request for arbitration, she sent a letter to Harrison's counsel informing him that he had an affirmative duty to respond and

6. There has been a recent proliferation of Lemon Law cases in the district courts of this Circuit regarding the import of the "first resort" requirement. The question that has divided the district courts is whether, after requesting arbitration, claimants are entitled to resort to the district court immediately upon expiration of the forty-day period set forth in the FTC regulations if they have not heard from the contracting ADR agency, see Polischchuk v. Nissan Motor Corp., No. 94-6991, 1995 WL 94798 (E.D. Pa. Mar. 6, 1995) (sending in request to BBB Auto Line and not receiving a response was sufficient); Jenkins v. General Motors Corp., No. 95-2710, 1995 WL 422680 (E.D. Pa. July 13, 1995) (issue of material fact precluded summary judgment as to whether plaintiff failed to 'first resort' to the informal dispute mechanism where plaintiff claimed that she was never sent a notice of hearing but defendant claimed it sent notice); Rudder v. American Motor Co., No. 94-6769, 1995 WL 216955 (E.D. Pa. Apr. 12, 1995) (complaint dismissed where plaintiff refused to participate in ADR procedure after requesting arbitration and receiving notice of hearing); Morganstein v. General Motors Corp., No. 94-3795, 1994 WL 558822 (E.D. Pa. Oct. 12, 1994) (claim dismissed where plaintiff filed a complaint rather than responding to notice of hearing from ADR procedure), or whether they must call or write so as to manifest a good faith effort to schedule the arbitration if the ADR body has not independently done so within that period, Levin v. American Honda Motor Co., No. 94-5380, 1994 WL 719856 (E.D. Pa. Dec. 12, 1994) (court dismissed claim without prejudice where plaintiff had requested arbitration and allegedly had not received a response).

8

schedule an arbitration hearing within five days.  The director represented that neither Harrison nor her counsel contacted the BBB regarding arbitration.  Therefore, a week after sending the letter, the BBB Auto Line closed the case.  The district court denied the motion for reconsideration as well.

## II.

### A.

The denial of a motion to dismiss for lack of subject matter jurisdiction is not appealable.  Commonwealth of Pa. v. Brown, 373 F.2d 771 (3d Cir. 1967).  However, an order denying a motion to compel arbitration under the Federal Arbitration Act ("FAA") is immediately appealable. 9 U.S.C. § 16.  Nissan submits that this Court has jurisdiction because the district court orders were equivalent to orders denying motions to compel arbitration under the FAA.

In 1925, Congress enacted the FAA to encourage courts to enforce arbitration clauses in contracts, contrary to prior common law which disfavored such agreements.  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991).  The FAA provides in this regard the following:

> A written provision in any...contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

9

contract.

9 U.S.C. § 2. In furtherance of this provision, § 4 of the FAA authorizes a party to file a motion to compel arbitration if the other party refuses to comply with the agreement to arbitrate. Id. § 4.[7]

Section 16 of the FAA, passed in 1988, allows the interlocutory appeal of an order denying a motion to compel arbitration under the FAA. The section was added to "make[] clear that any order favoring litigation over arbitration is immediately appealable and any order favoring arbitration over litigation is not." Ballay v. Legg Mason Wood Walker, Inc, 878 F.2d 729, 732 (3d Cir. 1989). Nissan argues that, since the district court chose litigation over arbitration, the orders are immediately appealable.[8]

7. § 4 provides:
A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

8. We note as a threshold matter that, for the FAA to apply, the party seeking to compel FAA arbitration must show the existence

10

Nissan's jurisdictional argument, however, faces two significant hurdles, both of which present issues of potential first impression for this Court. First, it is not evident that Nissan's motion to dismiss was a sufficient surrogate for a motion to compel arbitration under the FAA to enable us to sustain appellate jurisdiction under § 16. Second, it is unclear whether the FAA applies to an agreement to participate in an "informal dispute resolution mechanism," such as the BBB Auto Line.

Turning to the first question, we note that other courts have treated a motion to dismiss for failure to arbitrate claims as a motion to compel arbitration. See Hercules & Co. v. Beltway Carpet Serv., 592 A.2d 1069, 1071-72 (D.C. App. 1991) (..continued)
of a written agreement that contains an arbitration clause and affects interstate commerce. See 9 U.S.C. § 1, § 2, and § 4. The point is not free from doubt in the case at bar. However, leaving aside for a moment the (cognate) question whether the ADR procedure at issue here is "arbitration" within the meaning of the FAA, the point we find case-dispositive, see infra, we are satisfied that there is a sufficient agreement qua agreement. Although the warranty states that the use of the BBB Auto Line is voluntary, and it alone does not constitute a sufficient written agreement, the warranty constituted an offer to arbitrate that was accepted by the written request for arbitration sent by Harrison's counsel to the BBB Auto Line, the manner of acceptance prescribed by the offer, see Kroeze v. Chloride Group Ltd., 572 F.2d 1099, 1105 (5th Cir. 1978) ("The offeror is the master of his offer. An offeror may prescribe as many conditions, terms or the like as he may wish, including but not limited to, the time, place and method of acceptance."); Glenway Indus., Inc. v. Wheelabrator-Frye, Inc., 686 F.2d 415, 417 (6th Cir. 1982) (same). Alternatively, Harrison's counsel's letter to the BBB Auto Line constituted an offer to arbitrate which was accepted by Nissan's reply to the BBB Auto Line that it would arbitrate the dispute. Under either of these theories, there was a sufficient agreement.

11

(holding that an order denying a motion to dismiss for failure to arbitrate was appealable under the D.C. arbitration statute, which is similar to the FAA); Interstate Securities Corp. v. Siegel, 676 F. Supp. 54, 55 (S.D.N.Y. 1988) (motion to dismiss treated as a motion to compel arbitration and to stay proceedings until completion of arbitration).[9]  There is, of course, logic to this construction.  On the other hand, linguistically, a motion to dismiss, even for failure to pursue the statutorily provided threshold arbitral remedy, is a far cry from a "motion to compel arbitration."  Fortunately, we need not resolve this question here because of our resolution of the second issue before us.[10]

B.

We turn to the question whether the FAA cognizes an agreement to submit to the ADR procedure at issue here.  Harrison contends that, because the BBB Auto Line arbitration is nonbinding (at least on the claimant), the FAA is not applicable here.  Contrary to Harrison's contention, there is authority for the proposition that a court may issue an order compelling

---

9.  We note, too, the policy favoring the avoidance of jurisdictional-based dismissals that might waste judicial resources.  See, e.g., Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989) (holding that the courts of appeals may grant a motion to dismiss a dispensable party when dismissal is required to maintain diversity jurisdiction and results in no prejudice to any of the parties, even though no statute specifically authorizes granting the motion at the appellate level).

10.  Judge Roth would hold that, under the facts of this case, a motion to dismiss is not a surrogate for a motion to compel arbitration and would dismiss the appeal on that ground as well.

nonbinding arbitration under the FAA.  See AMF Inc. v. Brunswick Corp. 621 F. Supp. 456, 461 (E.D.N.Y. 1985) (court could compel the parties to submit their dispute to third party for an advisory non-binding opinion under the FAA); Kelley v. Benchmark Homes, Inc., 550 N.W.2d 640 (Neb. 1996) (FAA applies to non-binding arbitration).  Moreover, New York appellate courts have held that, under the New York Arbitration Act, courts should enforce agreements to submit disputes to nonbinding arbitration, see Board of Educ. v. Cracovia, 321 N.Y.S.2d 496 (App. Div. 1971) (court can compel arbitration although the arbitration may be advisory rather than binding), and the Federal Arbitration Act was modeled after the New York Arbitration Act.  See S. Rep. No. 536, 68th Cong. 1st Sess. 3 (1924).  These courts have pointed out that the arbitration acts were designed to encourage courts to enforce agreements to arbitrate, and have suggested that this policy is no less compelling where the parties have agreed to submit their disputes to nonbinding arbitration.

Perhaps the most useful approach to the question whether the FAA applies to nonbinding arbitration is that of Judge Weinstein in AMF v. Brunswick Corp., 621 F. Supp. 456 (E.D.N.Y. 1985).  In that case, Judge Weinstein enforced an agreement to submit a dispute to nonbinding arbitration.  He, however, did not explicitly hold that the FAA applies to all forms of non-binding arbitration; rather, he relied on § 2 of the FAA which states that the FAA applies to "contract[s] . . . to

13

settle [disputes] by arbitration," 9 U.S.C. § 2 (emphasis added). Thus focusing the question on whether the arbitration at issue there might realistically settle the dispute, Judge Weinstein held that "[v]iewed in the light of reasonable commercial expectations the dispute will be settled by this arbitration." Id. at 461.

Considering the Auto Line mechanism in light of Judge Weinstein's approach, the question whether the nonbinding character of the procedures precludes the application of the FAA is close. Harrison contends that the requirements for Lemon Law mechanisms are such that there is no reasonable expectation that resort to the mechanism will settle the dispute. In this regard, Harrison argues that the Lemon Law and the FAA are a mismatch. The FAA was intended to apply to those contracts that show a true undertaking by both parties to arbitrate the dispute. But Lemon Law mechanisms are conditional and one-sided -- in particular, decisions are not binding on the claimants and claimants may file suit after forty days if a decision is not forthcoming -- and it cannot be said, according to Harrison, that claimants under all circumstances undertake to settle their disputes when they submit them to Lemon law arbitration.

At oral argument, Harrison's counsel also pointed out that a Lemon Law claimant will almost always file suit after the completion of the BBB Auto Line procedures because the BBB Auto Line is not authorized to award many types of damages that a

14

plaintiff can receive under the Lemon Law.  Moreover, a Lemon Law plaintiff will usually have other causes of action against the dealer or manufacturer (e.g., Consumer Fraud Act, UCC) that can only be resolved through litigation.  In sum, Harrison credibly asserts that there is no reasonable commercial expectation that the disputes will be resolved through the BBB Auto Line.

Nissan rejoins that the purpose of the Lemon Law "first resort" requirement is to encourage manufacturers to establish informal dispute resolution mechanisms through which the bulk of warranty disputes can be resolved fairly and quickly without resort to litigation.  Under this view, the FTC regulations are slanted in favor of consumers to ensure that the informal dispute resolution procedures are as fair as possible to the consumers.  Because of the safeguards guaranteeing fairness, Nissan contends that there is a reasonable expectation that Lemon Law disputes will be resolved by the BBB Auto Line.  If there was no expectation that these procedures would settle the majority of such disputes, Nissan forcefully points out, automobile manufacturers would refuse to bear the cost of creating mechanisms such as the BBB Auto Line.

We also acknowledge the force of Nissan's arguments that Congress intended to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause, see Perry v. Thomas, 482 U.S. 483, 490 (1987), and that whether an agreement to arbitrate a dispute in interstate

15

commerce is "binding," "partially binding" or "not binding at all" may have nothing to do with "the full reach of the Commerce Clause."  All that is required for any such agreement to trigger the Commerce Clause, the argument continues, is that it pertain to a matter affecting interstate commerce, and the agreement involved in this case does.  However, we need not reach the question whether the FAA applies to nonbinding arbitration in general, or whether the nonbinding character of the BBB Auto Line prevents the application of the FAA to this particular case, because we are satisfied that the informal dispute resolution procedure provided by Nissan pursuant to the Lemon Law and the Magnuson-Moss Warranty Act is not "arbitration" as contemplated by the FAA.

We note first that the FAA does not define the term "arbitration," and both courts and commentators have struggled to do so.  This debate has occurred largely in the context of whether the FAA applies to nonbinding arbitration, as we explained above.  Judge Weinstein has pointed out that arbitration has been defined in different ways, and "[a]t no time have the courts insisted on a rigid or formalistic approach to a definition of arbitration."  AMF, 621 F. Supp. at 460.  In defining arbitration for purposes of determining whether the nonbinding arbitration clause before him was subject to enforcement under the FAA, he concluded that "[a]rbitration is creature of contract, a device of the parties rather than the

16

judicial process.  If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration."  Id.

Although it defies easy definition, the essence of arbitration, we think, is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, i.e. to an award made by a third-party arbitrator.  Arbitration does not occur until the process is completed and the arbitrator makes a decision.  Hence, if one party seeks an order compelling arbitration and it is granted, the parties must then arbitrate their dispute to an arbitrators' decision, and cannot seek recourse to the courts before that time.  Cf. Great Western Mortgage Corp. v. Peacock, ___ F.3d ___, 1997 WL 153012 (3d Cir. 1997) ("Once a dispute is determined to be validly arbitrable, all other issues are to be decided at arbitration.").

But the informal alternative dispute resolution process contemplated by the Lemon Law does not fit this characterization. Rather, while many cases in which claimants invoke the informal process will proceed to an arbitrator's award, some will not. That is because, under the FTC regulations with which a mechanism must comply, a dissatisfied car owner can file suit under the Lemon Law if he or she has not received a decision from the arbitrator after forty days.  In other words, whatever the meaning of the "first resort" requirement, a claimant cannot be

17

barred from pursuing litigation under the Lemon Law if the mechanism delays for more than forty days. The claimant would not, therefore, pursue the procedure to completion in all cases. Under all these circumstances, the informal dispute resolution mechanism provided for by Nissan pursuant to the Lemon Law does not constitute arbitration within the meaning of the FAA.

This conclusion is supported by the policies that underlie the Lemon Law. Consumer statutes, such as the Magnuson-Moss Warranty Act and the Lemon laws, were enacted under the assumption that manufacturers are often reluctant to provide the relief to consumers that their warranties promise. See H.R. Rep. 93-1107, reprinted in 1974 U.S.C.C.A.N. 7702 ("Another growing source of resentment has been the inability to get many . . . products properly repaired and the developing awareness that the paper with the filigree border bearing the bold caption 'Warranty' . . . was often of no greater worth than the paper it was printed on.").

Therefore, the consumer laws and the FTC regulations promulgated to guide providers of alternative dispute resolution mechanisms are slanted toward the consumer: consumers must comply with only minimal requirements, while the warrantors must follow more elaborate and more burdensome rules, 16 C.F.R. § 703.2, and, moreover, are bound by the results of the arbitration, see 73 P.S. § 1959. Additionally, the contracting ADR agency must comply with certain requirements under the FTC regulations; among

18

them is the requirement that the body not delay its decision for more than forty days, with only few exceptions.  16 C.F.R. § 703.5(d), (e) & (i).  Applying the FAA to these procedures would arguably frustrate the policies underlying the consumer laws by placing additional burdens on consumers.  That is, if forced to arbitrate their disputes with the manufacturers to an arbitrator's decision in every case, consumers would face additional hurdles that were not contemplated by the drafters of the Lemon Law.

We find further support for the conclusion that the FAA does not apply to Lemon Law ADR procedures in the fact that the Lemon Law, the Magnuson-Moss Warranty Act, and the FTC regulations all refer to the procedure at issue as an "informal dispute resolution procedure."  If the drafters had intended this procedure to be cognizable under the FAA, then it is likely that they would have referred to it as "arbitration."  Indeed, the term "arbitration" has come into this case solely because the BBB Auto Line has labeled the second part of its procedures "arbitration."  That alone is not sufficient to trigger the FAA.  We, therefore, hold that Harrison and Nissan did not enter into a contract to arbitrate their dispute within the meaning of the FAA and that we lack jurisdiction over Nissan's appeal.

In reaching this holding, we acknowledge the force of Nissan's contention that refusing to extend the FAA to Lemon Law arbitration would make
a mockery of the scheme Congress created, [would] discourage,

19

rather than encourage, manufacturers from establishing and making available such mechanisms, and delay resolution of consumer warranty claims. That would be in a direct conflict with the expressly stated Congressional policy of "encourag[ing] warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms."

We are sympathetic to Nissan's concerns, and view with disfavor the apparent policy of some Lemon Law counsel of "going through the motions" of the alternative dispute resolution process to get quickly into court, rather than trying to effect a speedy resolution of the claim through the ADR procedures.[11] We also understand that such tactics might frustrate the policies behind the Pennsylvania Lemon Law. But such an argument cannot and does not control the question whether § 16 of the FAA permits our

11. We note in this regard that representations made during oral argument on the question of the extent to which the "first resort" requires Lemon Law claimants to exhaust the available ADR procedures before filing suit were troubling. Counsel for Ms. Harrison, who concededly has one of the largest Lemon Law practices in Southeastern Pennsylvania, acknowledged during oral argument that he has never participated in a BBB Auto Line arbitration, observing that "the program cannot provide what our clients want." Tr. of Oral Arg. at 47. Nissan asserts, against this background, that Harrison's contention that the consumer should be able to satisfy the "first resort" requirement by the simple act of "requesting" arbitration and then refusing to participate further is suspect. In Nissan's submission, counsel's actions and contentions are contrary to the very purpose of the Magnuson–Moss Warranty Act and the state lemon laws, which is to encourage manufacturers to establish informal dispute resolution mechanisms so that the bulk of warranty disputes can be quickly and inexpensively resolved in unbiased neutral nonjudicial forums. See 15 U.S.C. § 2310(a)(1). We could not, of course, decide what the Lemon Law requires in the way of first resort even if it were before us, because of the absence of a record. We assume that the matter will come before us after final judgment in one of the district courts of this Circuit in the not too distant future.

20

asserting appellate jurisdiction in this case.

C.

Nissan has not argued that these orders entered by the district court are collaterally appealable. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949). At all events, there is no support for treating the orders as such. To satisfy Cohen, the order must be conclusive, resolve an important issue severable from the merits of the action, and be effectively unreviewable upon appeal from the final order. The district court's orders do not meet these requirements. The fact that an order will require a party to continue to litigate the matter does not alone make the order effectively unreviewable. See Lauro Lines v. Chasser, 490 U.S. 495 (1989) (district court order denying a motion to dismiss based on a forum selection clause in a contract was not a collaterally appealable order under Cohen); Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863 (1994) (district court's order vacating dismissal based on settlement agreement that would protect settling parties from trial was not a collaterally appealable order). Therefore, there is no other basis for exercising appellate jurisdiction.

III.

For the foregoing reasons, the district court's orders denying appellant's motion to dismiss for lack of subject matter jurisdiction and appellant's motion for reconsideration are not immediately appealable. The appeal will therefore be dismissed

21

for lack of appellate jurisdiction.