**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Plaintiff,**

and

**O'Neill, Lysaght & Sun, Appellant,**

v.

**Robert Allan FERRANTE, Defendant–Appellee.**

**No. 02–56581.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2003.

Filed April 6, 2004.

---

Donovan Cocas, Greines, Martin, Stein & Richland, Los Angeles, CA, for the appellant.

Raymond P. Sierralta, Law Offices of Raymond P. Sierralta, Los Angeles, CA, for defendant-appellee Ferrante.

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern

Before BEEZER and KOZINSKI, Circuit Judges, and SCHWARZER,* Senior District Judge.

SCHWARZER, Senior District Judge.

This is an appeal from the district court's order denying a motion by O'Neill, Lysaght and Sun LLP ("OLS") for adjudication of attorney fees and enforcement of attorney liens. The district court determined that it lacked subject matter jurisdiction. We have appellate jurisdiction under 28 U.S.C. § 1291 and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts, although somewhat convoluted, are undisputed. OLS were the long-time attorneys for Robert Allan Ferrante. The firm represented him in an action styled *Federal Savings and Loan Insurance Corp. v. Ferrante*, No. CV 86–03332 MRP ("the FSLIC action"), which was settled in 1990. The settlement agreement provided that the court "shall retain jurisdiction over this Agreement," but the record does not reflect that the court retained jurisdiction in the order of dismissal. Moreover, the record reflects no provision in the settlement agreement pertaining to attorney fees. In 1993 Ferrante filed for bankruptcy. At the time, he had fallen substantially behind in payments to OLS. In 1994, Ferrante executed a post-petition promissory note agreeing to pay OLS $2 million on account of the fees he owed. In addition, he signed a letter agreement entitling OLS to collect the amounts owed when he was able to sell his interest in a parcel of land located in Carson, California ("the Carson property").

The Carson property was entangled in environmental litigation, styled *Department of Toxic Substances Control v. Com-*

District of California, sitting by designation.

*mercial Real Projects, Inc., et al.,* No. 95–08773 MRP, in which OLS also represented Ferrante. In 2001 the district court signed a consent decree terminating that litigation. The decree provided that the court retained jurisdiction over the parties and the subject matter of the decree, and jurisdiction to enable the parties to apply to the court for, among other things, "dispute resolution in accordance with Paragraph XI of this Decree." Paragraph XI provided that the parties could seek relief from the court to resolve disputes they were unable to resolve themselves. The decree contained no provision concerning attorney fees. It appears that following entry of the decree the property was sold and Ferrante liquidated his interest, but has refused to pay the amounts claimed by OLS to be due under the promissory note and the letter agreement.

In 2001 OLS filed notices of attorney liens under the captions of the 1986 FSLIC action, *United States v. Ferrante,* No. CR 91–133 MRP, and *United States v. Ferrante,* No. CV 94–876 MRP, in each of which OLS represented Ferrante. In 2002 OLS filed the instant motion under the caption of the 4363 FSLIC action, alleging that the Carson litigation had been resolved but that Ferrante had failed and refused to pay any amounts due under the post-petition $2 million note. It contended that the district court had supplemental and ancillary jurisdiction pursuant to its jurisdiction of the FSLIC settlement agreement and its continuing supervision of the Carson consent decree. The district court denied the motion, holding that it had neither supplemental nor ancillary jurisdiction over OLS's claim. This appeal followed.

## DISCUSSION

### I. SUPPLEMENTAL JURISDICTION

■ Supplemental jurisdiction arises under 28 U.S.C. § 1367. That section vests jurisdiction in district courts having original jurisdiction of an action "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a). The district court had jurisdiction of the FSLIC action brought against Ferrante. OLS represented Ferrante in that action. By its motion, filed in the district court, it seeks to recover fees for services rendered in that and other actions. Its claim is based on the promissory note executed by Ferrante in 1994 on account of his fee obligations to OLS and a letter agreement. The question is whether OLS's claim for fees "forms part of the same case or controversy" as claims in the underlying FSLIC action. The answer is self-evident. Even if supplemental jurisdiction could attach following the final termination of the underlying action—an issue we need not address—suffice it to say that OLS's claim against Ferrante on his promissory note forms no part of the case or controversy underlying the FSLIC action (or the other actions in which notices of liens were filed). Accordingly, supplemental jurisdiction does not exist.

### II. ANCILLARY JURISDICTION

■ Because there is no diversity, federal question, or other independent basis for jurisdiction over this controversy, OLS seeks to invoke the doctrine of ancillary jurisdiction. In *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), the Supreme Court explicated the doctrine as follows:

> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and de-

grees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

*Id.* at 379–80, 114 S.Ct. 1673 (citations omitted).[1] OLS rests its claim on the second head of ancillary jurisdiction, arguing that claims for attorney fees ancillary to the case survive independently under the court's equitable jurisdiction and may be heard even if the underlying case has become moot. OLS misconceives the issue. The issue here is not whether OLS's claim for attorney fees may survive the termination of the underlying action; rather, it is whether the claim is ancillary to that action.[2]

The cases on which OLS relies do not support its contention that its claim is within the ancillary jurisdiction of the court. In *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), the Court held that the dismissal of the underlying action did not deprive the district court of jurisdiction to award attorney fees as a sanction for violation of Federal Rule of Civil Procedure 11, and explained:

> It is well established that a federal court may consider collateral issues after an action is no longer pending. For example, district courts may award costs after an action is dismissed for want of jurisdiction. This Court has indicated that motions for costs or attorney's fees are "independent proceedings supplemental to the original proceeding and not a request for a modification of the original decree." Thus, even "years after the entry of a judgment on the merits" a federal court could consider an award of counsel fees.

*Id.* at 395, 110 S.Ct. 2447 (citations omitted). But OLS misreads *Cooter & Gell* when it argues that it "concerns the inherent power of the district court to exercise

---

1. Wright, Miller & Marcus explain:

    The federal court has ancillary or supplemental jurisdiction for supplementary proceedings to enforce its judgment. As the Supreme Court recognized a century and a quarter ago, "[p]rocess subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate for the purposes for which it was conferred by the Constitution." [*Riggs v. Johnson County,* 6 Wall. 166, 187, 18 L.Ed. 768 (1867).] Recently the Court has reaffirmed the federal court's "inherent power to enforce its judgments," [*Peacock v. Thomas,* 516 U.S. 349, 356, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996),] and noted that it has "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." [*Id.*] But this power is limited to efforts to enforce the federal court's judgment in a case over which it has juris-

diction, and it does not extend to new lawsuits filed to impose related liabilities on others. [*Id.* at 356–59, 116 S.Ct. 862.]

12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS FEDERAL PRACTICE AND PROCEDURE § 3013 (2d ed.1997).

2. Our disposition of this appeal makes it unnecessary to consider the "pending case" requirement for the exercise of ancillary jurisdiction discussed in the district court's ruling and the parties' briefs. We note, however, that such a requirement finds no support in Supreme Court decisions. *See, e.g., Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending."); *Peacock v. Thomas,* 516 U.S. 349, 356, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) ("We have reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments."); *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 379–80, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("[W]e have asserted ancillary jurisdiction ... to enable a court to ... effectuate its decrees.").

control over ... the parties and attorneys who have appeared before it even long after an underlying suit has been concluded." Appellant's Opening Br. at 12. As the Second Circuit has explained, "[t]he Supreme Court left no doubt that ancillary jurisdiction was available to adjudicate the fee issue, not because Rule 11 was the source of the substantive law, but *because the fee issue was so closely related to the underlying litigation.*" *Zeisl v. Watman (In re Austrian & German Bank Holocaust Litig.)*, 317 F.3d 91, 98 n. 9 (2d Cir.2003) (emphasis added).

■ The same is true of the other cases cited by OLS. In *Sprague v. Ticonic National Bank,* 307 U.S. 161, 164–67, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), ancillary jurisdiction existed over plaintiff's post-decree claim for fees out of the proceeds of the underlying litigation. In *White v. New Hampshire Department of Employment,* 455 U.S. 445, 454, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), ancillary jurisdiction existed to award attorney's fees under 42 U.S.C. § 1988 to the prevailing party in the underlying litigation. These cases simply stand for the proposition that ancillary jurisdiction exists over attorney fee disputes collateral to the underlying litigation. *See also Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1329 (9th Cir. 1999) (court had ancillary jurisdiction to award attorney fees in class action when the underlying action had become moot); *Curry v. Del Priore,* 941 F.2d 730, 731–32 (9th Cir.1991) (on attorney's motion to withdraw, court had ancillary jurisdiction to order refund of portion of retainer); *Reiser v. Del Monte Props. Co.,* 605 F.2d 1135, 1140 (9th Cir.1979) (court had ancillary jurisdiction to award attorney fees to shareholders on common fund theory after the underlying action had become moot); *Grimes v. Chrysler Motors Corp.,* 565 F.2d 841, 843–44 (2d Cir.1977) (per curiam) (on motion of attorney to deposit settlement proceeds in court registry, court had ancillary jurisdiction to supervise distribution, including resolving disputes among attorneys claiming fees); *Iowa v. Union Asphalt & Roadoils, Inc.,* 409 F.2d 1239, 1243–44 (8th Cir.1969) (after attorneys had been granted leave to withdraw, court had ancillary jurisdiction to adjudicate attorneys' claim for fees); *American Fed'n of Tobacco—Growers v. Allen,* 186 F.2d 590, 592 (4th Cir.1951) (per curiam) (after settlement of antitrust action, court had ancillary jurisdiction to resolve dispute among attorneys over distribution of fees).

OLS's claim does not fall within the rubric of those decisions. The claim arises out of its effort to enforce a promissory note from its client and is wholly unrelated to the underlying actions.[3] That OLS may have performed services for Ferrante in those actions does not make its claim a matter collateral to those actions. Had OLS attempted to assert its attorney liens for services performed in connection with a particular action, it might have successfully invoked ancillary jurisdiction. As the court observed in *Jenkins v. Weinshienk,* 670 F.2d 915 (10th Cir.1982), "[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction." *Id.* at 918. But the court added, "the federal court has no jurisdiction to adjudicate the amount of fees properly owing between[attorney and client] with respect to matters unrelated

---

3. Of the three actions under whose captions OLS filed notices of attorney liens, the record reflects a court order reserving jurisdiction to enforce a settlement only in *Department of Toxic Substances Control,* No. 95–8773 MRP. That, however, is not the action captioned in the motion before the district court. Moreover, the reservation was for the purposes of resolving disputes among the parties. Nowhere does the decree refer to attorney fees.

to litigation before the court. To hold otherwise would open the federal courts to possible manipulations to circumvent diversity requirements." *Id.* at 919. So here, the district court lacked jurisdiction over the motion to adjudicate a claim on a promissory note, not a lien for legal services performed in a particular action. *See also Taylor v. Kelsey,* 666 F.2d 53, 54 (4th Cir.1981) (per curiam) (rejecting ancillary jurisdiction over claim by attorney against co-counsel that he had wrongfully terminated their association in the case and deprived him of share of contingent fee); *Bounougias v. Peters,* 369 F.2d 247, 249 (7th Cir.1966) (rejecting ancillary jurisdiction over client's action challenging attorneys' contingent fee agreement as unconscionable and unsupported by consideration).

## CONCLUSION

OLS's motion is a thinly disguised action to collect on a promissory note. On no theory does it fall within the district court's ancillary jurisdiction, much less its supplemental jurisdiction.

**AFFIRMED.**