GILMAN, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority opinion’s holding that the district court did not abuse its discretion in granting the Plaintiffs’ motion for a preliminary injunction. Accordingly, I concur in Part IV. of the opinion. I further agree with the majority’s, framework for analyzing motions to compel arbitration as described in Part III.A. But I respectfully disagree with the majority’s conclusion in Part III.B. that the Plaintiffs’ claims clearly and unambiguously fall outside the scope of Paragraph 3(a) of the Resolution Agreement. Such a conclusion strikes me as contrary to well-established circuit precedent and contravenes the “emphatic federal policy in favor of arbi-tral dispute resolution.” See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
Reading Paragraph 3(a) in the context of this particular dispute, I believe that the scope of the language is at best ambiguous. And because this court’s long-standing precedent requires that any ambiguity regarding the scope of an arbitration agreement be resolved in favor of arbitration,' I would hold that the Plaintiffs’ claims are arbitrable. I would therefore grant Pacific Seafood’s motion to compel arbitration.

1. Paragraph 3(a) is a valid arbitration agreement

The majority states that it “need not decide” whether Paragraph 3(a) is a. valid arbitration agreement because, notwithstanding such a determination, the Plaintiffs’ claims “are not encompassed by Paragraph 3(a)’s plain language.” (Maj. Op. 1018.) In other words, the majority bypasses the first step of the Chiron analysis and addresses only the second. But because I would hold that the dispute at issue is fairly encompassed within the scope of Paragraph 3(a), I will first consider whether Paragraph 3(a) constitutes a valid arbitration agreement. See Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir.2000). I believe that it does. •
The Federal Arbitration Act (FAA) does not specifically define the term “arbitration.” See 9 U.S.C. § 2. But in Wolsey Ltd. v. Foodmaker, Inc., 144 F.3d 1205 (9th Cir.1998), this court adopted the reasoning of two other courts in determining what constitutes an arbitration agreement within the meaning of the FAA. The Wolsey court first relied on the Eastern District of New York’s rather straightforward definition, which stated: “If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration.” Id. at 1208 (emphasis omitted) (quoting AMF Inc. v. Brunswick Corp., 621 F.Supp. 456, 460 (E.D.N.Y.1985)). The Wolsey court also observed *1026 that the Third Circuit, in a case decided the year before, had narrowed the definition to require that “the parties must ... also agree not to pursue litigation ‘until the process is completed.’ ” Id. (quoting Harrison v. Nissan Motor Corp., 111 F.3d 343, 350 (3d Cir.1997)). In applying Harrison, the Wolsey court reasoned that if the agreement in question does not “explicitly permit one of the parties to seek recourse to the courts” before an arbitrator makes a decision, then the agreement is arbitrable. Id. at 1209 (internal quotation marks omitted).
A “final factor weighing in favor” of arbitration, Wolsey emphasized, is the “presumption in favor of arbitrability created by the FAA.” Id. (noting that the FAA “was designed to overrule the judiciary’s longstanding refusal to enforce agreements to arbitrate” (citation and internal quotation marks omitted)). The Wolsey court concluded that the dispute in question satisfied both the Eastern District of New York’s and the Third Circuit’s criteria; it did not endorse one court’s definition over the other. Id. at 1208-09.
Here, Paragraph 3(a) of the Resolution Agreement would likewise satisfy both definitions of an arbitration agreement. Pacific Seafood and the West Coast fishermen, in adopting the Resolution Agreement, agreed to submit any objection to a “new agreement that requires Pacific Seafood Group to act as the exclusive marketer of any seafood product by Ocean Gold Seafoods” to a named third party (District Judge Hogan or his replacement, Magistrate Judge Jelderks) for a decision to “determine whether the proposed new agreement is pro-competitive.” This satisfies the Eastern District of New York’s broader definition of arbitration. In addition, Paragraph 3(a) does not “explicitly permit” either party to pursue litigation before the named third party renders a decision. See id. at 1209. It therefore satisfies the Third Circuit’s narrower definition. So according to either criterion, and in light of the “presumption in favor of arbitrability,” see id., Paragraph 3(a) should properly be considered as an arbitration agreement.
The Plaintiffs do not contest the fact that the West Coast fisherman had agreed to submit any dispute regarding a new exclusive marketing agreement to a third party for a decision. But they challenge the validity of Paragraph 3(a) on three alternate grounds. For the reasons discussed below, I believe that each challenge is without merit.
First, the Plaintiffs argue that Paragraph 3(a) is not an arbitration agreement because its language does not contain the word “arbitrate.” But such an argument was unequivocally rejected in Wolsey. Id. at 1208 (noting that “[n]o magic words such as ‘arbitrate’ or ‘binding arbitration’ or ‘final dispute resolution’ are needed” to invoke the FAA) (quoting AMF, 621 F.Supp. at 460). The argument therefore has no merit.
Next, the Plaintiffs argue that Paragraph 3(a) cannot be an arbitration agreement because it names District Judge Hogan or his replacement, Magistrate Judge Jelderks, as the third-party decisionmaker and, according to the Plaintiffs, federal district and magistrate judges cannot serve as arbitrators as a matter of law. Whether a federal district judge may act as an arbitrator is a question that need not be addressed here because District Judge Hogan has already retired from the federal bench. Magistrate Judge Jelderks would therefore serve as the third-party decisionmaker if Paragraph 3(a) is enforced. The relevant question is thus whether Magistrate Judge Jelderks may lawfully act as an arbitrator in the instant dispute.
*1027 Under the Federal Magistrates Act, 28 U.S.C. § 636, Congress gave federal courts broad discretion to designate certain duties to magistrate judges. These duties include conducting hearings, making factual findings, deciding motions, and rendering judgments in civil and criminal cases. See id. § 636(b)-(c). In addition to these specifically enumerated duties, Congress provided that magistrate judges “may be assigned such additional duties as are not inconsistent with the Constitution of the United States.” Id. § 636(b)(3). Courts have observed that, over time, “Congress has encouraged district court judges to experiment in the assignment of ... duties to magistrates and to otherwise engage in innovative experimentation in the use of magistrate judges.” Ovadiah v. New York Ass’n for New Americans, No. 95 CIV. 10523(SS), 1997 WL 342411, at *9 (S.D.N.Y. June 23, 1997) (brackets and internal quotation marks omitted) (quoting Denny v. Ford Motor Co., 146 F.R.D. 52, 55 (N.D.N.Y.1993)).
Whether one of the “additional duties” contemplated by Congress is the power of a magistrate judge to preside over arbitration proceedings has been a question that a number of courts have approached with great skepticism. See DDI Seamless Cylinder Int'l Inc. v. Gen. Fire Extinguisher Corp., 14 F.3d 1163, 1165 (7th Cir.1994) (avoiding language that called the procedure at issue an arbitration because federal statutes “do not appear to authorize or envisage the appointment of judges or magistrate judges as arbitrators”); Hameli v. Nazario, 930 F.Supp. 171, 181 (D.Del.1996) (“Arbitration is not in the job description of a federal judge, including a magistrate judge.” (alteration and citation omitted)); cf. Ovadiah, 1997 WL 342411 at *10 (acknowledging that “arbitration by a magistrate judge, upon the consent of the parties, may be ... permissible under the ‘additional duties’ clause” but warning that it “should be avoided”).
All of the above cases, however, predate Congress’s adoption of the Alternative Dispute Resolution Act of 1998 (the Act), which authorizes federal courts to use alternative dispute resolution processes “in which a neutral third party participates to assist in the resolution of issues in controversy, through processes such as ... arbitration.” 28 U.S.C. § 651(a). And in the Act, Congress specifically mentions magistrate judges as eligible third-party neutrals. Id. § 653(b) (noting that “the district court may use, among others, magistrate judges who have been trained to serve as neutrals in alternative dispute resolution processes”); see also Delaware Coal. for Open Gov’t v. Strine, 894 F.Supp.2d 493, 502 (D.Del.2012) (noting that “the Alternative Dispute Resolution Act ... seems to allow magistrate judges to serve as arbitrators,” even though commenting that such an approach is uncommon).
The Plaintiffs’ argument that magistrate judges may not serve as arbitrators is therefore without merit in light of Congress’s specific language to the contrary. But the majority asserts that these statutes do not apply to the instant dispute because “[t]he Alternative Dispute Resolution Act plainly requires the authorization to come from the ‘United States district court ... by local rule,’ not from a single judge of that court.” (Maj. Op. 1020 n. 7) (ellipsis in original). In response, I would point out that the authorization here is based on the District of Oregon’s local rules. The local rule in question specifically permits an individual judge — “on his/her own motion or at the request of a party”— to assign the case to arbitration. D. Or. R. 16.4(e)(4)(A). I therefore do not believe that the arbitration procedure at issue is in any way inconsistent with this rule or with the Alternative Dispute Resolution Act. My conclusion is bolstered by the District of Oregon’s comments following the local rule, which specifically state that the rule *1028 was clarified to “[r]einforce[ ] the assigned judges’ powers” to refer civil cases to all forms of alternative dispute resolution, including arbitration. See id. 16.4(e) cmt. on Jan. 1, 2011 amend.
Pursuant to this local rule, the record shows that the district court overseeing the Whaley litigation adopted and approved the terms of the Resolution Agreement, which included the arbitration procedure set forth in Paragraph 3(a). In so doing, the district court expressly noted that “the District Court of Oregon retains jurisdiction over ... the implementation, interpretation and enforcement of the terms of the Stipulation and Resolution Agreement.”
By the plain language of the District of Oregon’s local rule as well as its own judgment and order of dismissal, the district court therefore not only authorized the arbitration procedure at issue — one in which Magistrate Judge Jelderks would presently act as the arbitrator — but also retained jurisdiction to enforce the terms of the agreement. I accordingly conclude that the parties’ designation of Magistrate Judge Jelderks does not invalidate the arbitration procedure set forth in Paragraph 3(a).
Finally, the Plaintiffs argue that Paragraph 3(a) is not an arbitration clause, but rather an ancillary-jurisdiction clause in connection with the Whaley litigation. Ancillary jurisdiction, however, does not extend to “proceedings that are entirely new and original ... or where the relief sought is of a different kind or on a different principle than that of the prior decree.” Peacock v. Thomas, 516 U.S. 349, 358, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (brackets, citation, and internal quotation marks omitted). Because ancillary jurisdiction is not an “inherent power” of the federal courts, a court • must “explicitly retain[ ] jurisdiction over the settlement agreement, or incorporate[ ] the terms of the agreement in its dismissal order” to exercise such jurisdiction. Arata v. Nu Skin Int’l, 96 F.3d 1265, 1268-69 (9th Cir.1996); see also Fed. Sav. and Loan Ins. Corp. v. Ferrante, 364 F.3d 1037, 1041-42 (9th Cir.2004) (holding that enforcement of a promissory note was “wholly unrelated” to a lien for legal services performed in a prior action and, therefore, the court lacked ancillary jurisdiction over the subsequent proceeding).
The doctrine is not applicable here. Not only does Paragraph 3(a) relate to disputes that are “wholly unrelated” to the underlying Whaley litigation, see Ferrante, 364 F.3d at 1041, but it also contemplates arbitration based on “entirely new and original” facts, Peacock, 516 U.S. at 358, 116 S.Ct. 862. The language of Paragraph 3(a) explicitly refers to a “new contractual arrangement” and a “proposed new agreement” between Pacific Seafood and Ocean Gold that would be submitted to a third-party decisionmaker. Proceedings under Paragraph 3(a) would thus necessarily be predicated on entirely new and original facts and governed under a new standard of sustainability — i.e., whether the proposed new agreement between Pacific Seafood and Ocean Gold is “pro-competitive.” Because Paragraph 3(a) cannot be fairly read as an ancillary-jurisdiction clause, the Plaintiffs’ challenge on this point is without mérit.
In sum, I would hold that Paragraph 3(a) is a valid arbitration agreement under ■ Chiron’s first prong. See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir.2000). This leads me to the second prong of Chiron — whether Paragraph 3(a) “encompasses the dispute at issue,” id., — and I conclude that it does.

2. The dispute falls within the scope of Paragraph 3(a)

The crux of my disagreement with the majority is its conclusion that the “plain *1029 language” of Paragraph 3(a) precludes the proposed stock acquisition between Pacific Seafood and Ocean Gold from falling within its scope. (Maj. Op. 1018-19.) This conclusion rests solely on the majority’s extended focus on the word “requires” within Paragraph 3(a). The majority first states that Paragraph 3(a) applies to “disputes regarding ‘any new agreement that requires Pacific Seafood Group to act as the exclusive marketer of any seafood product produced by Ocean Gold Sea-foods.’ ” (Id. at 1019.) This simply quotes the terms of the agreement, and is thus undisputed.
But the majority then categorically concludes that because the proposed stock acquisition “details] Pacific Seafood’s plan to purchase Ocean Gold’s stock” without any “explicit” language requiring Pacific Seafood to act as the exclusive marketer, the proposed acquisition does “not pertain to marketing.” (Id. at 1019.) The majority would thus bar the application of Paragraph 3(a) even if the proposed acquisition would “functionally require” Pacific Seafood to act as an exclusive marketer of Ocean Gold’s products, as is argued by Pacific Seafood. (Id. at 1019) (Emphasis in original.) In response, the majority maintains that “the owner of a company is not necessarily that company’s exclusive marketer” because, although it may have “the right ” to market products, “there is no requirement that it do so.” (Id. at 1019) (Emphasis in original.) Solely based on this reasoning, the majority concludes that the “Plaintiffs’ claims are not encompassed by Paragraph 3(a)’s plain language.” (Id. at 1019.)
I, on the other hand, am of the opinion that the majority reads too much into the word “requires” when neither the district court nor the parties themselves argue that its usage is dispositive of the arbitration question. This is especially true in light of the strong presumption in favor of arbitrability, see Wolsey Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1209 (9th Cir.1998), and this court’s holding that, “if the purported agreement is susceptible of an interpretation that would allow arbitration, any doubts should be resolved in favor of arbitration.” Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 479 (9th Cir.1991) (alterations and internal quotation marks omitted) (quoting French v. Merrill Lynch, 784 F.2d 902, 908 (9th Cir.1986)).
Contrary to the majority’s view, I believe that Paragraph 3(a) is susceptible of an interpretation that would permit the proposed stock acquisition to fall within its scope. Perhaps the choice of the word “requires” was simply an oddity of draftsmanship. One would think that a more appropriate word would be “permits” or “authorizes.” Pacific Seafood, after all, presumably desired to be Ocean Gold’s exclusive marketer; no one would think of Pacific Seafood being forced-to do so.
So what did the parties intend by the word “requires”? The record is silent on this point, which raises an ambiguity about the paragraph’s scope. Pacific Seafood argues that the Plaintiffs “ignore[ ] the economic reality” of the proposed purchase of Ocean Gold’s stock, which would have the “effect” of empowering Pacific Seafood to become the exclusive marketer of Ocean Gold’s seafood. Even the Plaintiffs point out that the proposed stock acquisition would give Pacific Seafood “full authority to make ... decisions” related to management and operations. For all practical purposes, then, the proposed acquisition is a new agreement that would functionally permit Pacific Seafood to exclusively market Ocean Gold’s products — rights that were granted to Pacific Seafood in the February 2006 agreement and are set to expire in 2016.
This precise scenario, however, is presumably what the Plaintiffs were seeking *1030 to avoid in Paragraph 3(a) of the Resolution Agreement because they did not want Pacific Seafood to be in the position of continuing to be the exclusive marketer of Ocean Gold’s products. Yet this stock acquisition would allow Pacific Seafood to do just that. To prevent such a paradoxical outcome, the proposed agreement should not be categorically excluded from falling within Paragraph 3(a)’s scope simply because it lacks express language specifying an exclusive marketing requirement.
I believe that this is a very plausible argument, an argument that brings into play the principle that “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.” See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1131 (9th Cir.2000) (quoting Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).
Pacific Seafood’s argument is all the stronger because the Plaintiffs themselves initially invoked Paragraph 3(a) when they brought a breach-of-contraet action against Pacific Seafood for the very transaction in question. The fact that the Plaintiffs later dismissed this claim in the belief (mistaken, for the reasons explained above) that magistrate judges cannot be arbitrators does not diminish the point that even the Plaintiffs at one point argued that Paragraph 3(a) governs the current dispute. They now contend the opposite, but this simply highlights the ambiguity over whether Paragraph 3(a) requires arbitration.
In any event, to place an outsized emphasis on the one word “requires,” when its usage and operation is not analyzed with particularity in either party’s brief, assigns unwarranted weight to a clause that is arguably unclear. Such ambiguity should not bar the applicability of the arbitration agreement and instead should militate in its favor.
Finally, I reach my conclusion in light of the this court’s precedent favoring a strong presumption of arbitrability. Wolsey, 144 F.3d at 1209; see also Republic of Nicaragua, 937 F.2d at 478 (“[T]he clear weight of authority holds that the most minimal indication of the parties’ intent to arbitrate must be given full effect....”); Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir.1999) (holding that disputes “need only touch matters covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability” (citation and internal quotation marks omitted)).
This is an instance in which the issues involved in the proposed stock acquisition — including the practical effect that it would have on marketing exclusivity— would clearly “touch matters” contemplated in the Resolution Agreement. And because we are constrained by Chiron and the FAA from conducting any further inquiry into the substance of the agreement and should resolve all doubts in favor of arbitrability, I would grant Pacific Seafood’s motion to compel arbitration.