

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2003

# Dluhos v. Strasberg

Precedential or Non-Precedential: Precedential

Docket 01-3713

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Dluhos v. Strasberg" (2003). *2003 Decisions.* Paper 774.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/774

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed February 20, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3713

ERIC DLUHOS,

Plaintiff-Appellant,

v.

ANNA STRASBERG; MARK ROESLER, Esquire, JANE
DOE, a/k/a Marilyn.cmgworldwide.com; CMG
WORLDWIDE, INC.; THE ESTATE OF LEE STRASBERG;
THE LEE STRASBERG THEATRE INSTITUTE; NETWORK
SOLUTIONS, INC., and JOHN DOES/JANE DOES (1-10),

Defendants-Appellees.

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 00-CV-03163)
District Judge: The Honorable John C. Lifland

Argued: January 16, 2003

Before: ROTH, FUENTES and ALDISERT, Circuit Ju dges,

(Filed: February 20, 2003)

Eric Dluhos (argued)
One Tremont Avenue
Belleville, New Jersey 07109

PRO SE


Randy M. Mastro (argued)
Peter M. Skinner
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166-0193

ATTORNEY FOR APPELLEES
Anna Strasberg, the Estate of Lee
Strasberg, the Lee Strasberg
Theatre Institute, Mark Roesler,
Esq., and CMG Worldwide, Inc.

Sheri Claire Lewis (argued)
Rivkin Radler LLP
EAB Plaza
200 Park Avenue
Uniondale, New York 11556

Philip L. Sbarbaro
VeriSign, Inc.
21355 Ridgetop Circle
Dulles, Virginia 20166

ATTORNEY FOR APPELLEE
Network Solutions, Inc.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal requires us to decide whether a dispute
resolution under the Internet Corporation for Assigned
Names and Numbers' Uniform Domain Name Dispute
Resolution Policy ("UDRP") is entitled to the extremely
deferential standard of judicial review set forth in the
Federal Arbitration Act ("FAA"), 9 U.S.C.S 10(a)(2)-10(a)(3).
After Appellant Eric Dluhos registered the domain name
<www.leestrasberg.com> invoking the name of the
renowned acting coach, representatives of Lee Strasberg's
widow, his eponymous acting institute and his estate
instituted administrative proceedings culminating in a
National Arbitration Foundation dispute resolution that
shifted the domain name from Dluhos to the Strasberg

2

parties. Dluhos simultaneously sought relief in the district
court, which applied the FAA standards to the NAF panel's
order and dismissed the complaint. Dluhos appealed, and
we now reverse.

Among Appellant's various contentions, he appeals from
the district court's refusal to vacate an order under the
UDRP. Constitutional issues are presented, but we must
first decide whether the district court properly chose to
review the NAF panel's decision under the Federal
Arbitration Act's deferential standards for judicial review of
arbitration decisions and a separate "manifest disregard for
the law" standard, or whether a UDRP dispute resolution
proceeding does not qualify as "arbitration" under the FAA
and instead falls under broader category of review.

I.

In the district court, Dluhos had filed a complaint against
Anna Strasberg, the Estate of Lee Strasberg and the Lee
Strasberg Theatre Institute (the "Strasberg defendants");
Mark Roesler and CMG Worldwide Inc. (the "CMG
defendants"); and Network Solutions, Inc. The court ruled
that he failed to state a claim for which relief may be
granted. Rule 12(b)(6) Federal Rules of Civil Procedure.

The United States District Court for the District of New
Jersey had jurisdiction of the underlying action pursuant to
28 U.S.C. S 1331 based on Appellant's constitutional claims
and his challenge to the constitutionality of the arbitration

process1 brought under 42 U.S.C.S 1983, and his sundry state law claims pursuant to 28 U.S.C. S 1367(a). As will become clear, the court also had jurisdiction under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. S 1114(2)(D)(v). We have appellate jurisdiction pursuant to 28 U.S.C. S 1291.

Pursuant to a Cooperative Agreement with the federal National Science Foundation (NSF), one of the Appellees,

---

1. The Federal Arbitration Act itself does not create federal question jurisdiction. Roadway Package Sys. v. Kaiser, 257 F.3d 287, 291 n.1 (3d Cir. 2001) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983)).

Network Solutions, Inc. (NSI), a private entity, is the exclusive provider of Internet domain name registration services to the public.2 On June 25, 1999, pro se plaintiff Eric Dluhos entered into a domain-name registration agreement with NSI to register the domain name <www.leestrasberg.com>. The registration agreement required Dluhos to abide by NSI's ever-evolving dispute resolution policy, which incorporated the Internet Corporation for Assigned Names and Numbers' Uniform Domain Name Dispute Resolution Policy as it developed. The UDRP -- and thus Dluhos' agreement with NSI-- requires a domain-name registrant to submit to a "mandatory administrative proceeding" before an approved dispute resolution service provider to resolve a third party's complaint concerning the registration and use of a particular registered domain name. Uniform Domain Name Dispute Resolution Policy 4(a) (Oct. 24, 1999), available at http://www.icann.org/dndr/udrp/policy.htm. The National Arbitration Forum is one such approved provider. See Approved Providers for Uniform Domain Name Dispute Resolution Policy, available at http://www.icann.org/ dndr/udrp/approved-providers.htm (listing the National Arbitration Foundation as an approved resolution provider).

---

2. In 1990, the Department of Defense handed over its administration of the Advanced Research Projects Agency Net (ARPANET), the predecessor to the modern Internet, to the National Science Foundation -- an agency created by Congress in 1950 for the purpose of promoting science and engineering through programs in research and education projects. See 42 U.S.C. S 1861 et seq. (authorizing the establishment of the NSF); NSF and Domain Names, available at http://www.nsf.gov/od/lpa/news/ media/fsdomnames.htm (providing an "Early History" of the NSF 's involvement with the registration of domain names). In 1993, telecommunications-services provider NSI -- a wholly owned subsidiary of VeriSign, Inc. -- won a competitively awarded Cooperative Agreement from the NSF to register second-level domain-names on the Internet. Id.

The domain-name registration process is largely automated and involves the registrant's transmission of a registration application to NSI. If accepted by NSI, the application becomes the Registration Agreement,

and the domain name is simply entered into a registry database. Following entry, NSI has no knowledge or input as to how or if the domain name will be used. Appellee Network Solutions, Inc.'s Brief at 1; NSI-NSF Cooperation Agreement (Jan. 1, 1993), available at http:// www.icann.org/nsi/coopagmt-01jan93.htm.

4

Anna Strasberg -- the widow of actor and acting coach Lee Strasberg -- owns and directs the Lee Strasberg Theatre Institute and serves as the executrix of the Estate of Lee Strasberg. As executrix, she is responsible for Estate-owned trademarks and service marks, which include"The Lee Strasberg Institute" and "Actor by Lee Strasberg." CMG Worldwide, Inc. represents and manages Internet sites for the Estate, the Institute and Anna Strasberg. CMG maintains an official Web sites for the Institute, the Estate and Anna Strasberg at <www.strasberg.com>.

Dluhos' registration of <www.leestrasberg.com> came to the attention of Mark Roesler, CMG's chief executive officer. In May 2000, Roesler sent four letters to Dluhos, informing him that his use of the domain name <www.leestrasberg.com> violated the Strasberg trademarks and that CMG would take action to have the domain name transferred, potentially through UDRP dispute resolution, if Dluhos would not rescind it.

Having heard nothing from Dluhos, CMG submitted a complaint to the National Arbitration Foundation on June 2, 2000. The complaint requested a UDRP dispute resolution proceeding and formally disputed Dluhos' right to use the domain name, alleging that the domain name was "identical or confusingly similar to" a trademark owned by the Estate; that Dluhos had "no rights or legitimate interests" in the name; and that he had registered and used the name "in bad faith." Dluhos had until June 26, 2000 to respond. Rather than participating in the dispute resolution process to which he had agreed when he registered the domain name with NSI a year earlier, Dluhos submitted a letter of limited appearance to the NAF to explain that he would not submit to dispute resolution because he contested the NAF 's jurisdiction over the matter. He added that he would instead file a complaint in federal court. On June 27, 2000, he did just that. He filed a complaint against the Strasberg defendants and the CMG defendants with the district court challenging the constitutionality of the dispute resolution process.

Three days later on June 30, 2000, a one-member NAF panel issued an order suspending the NAF/UDRP proceeding in light of the pending federal lawsuit. See

5

UDRP S 18 (giving panel "the discretion to decide whether to suspend or terminate the administrative proceeding, or to proceed to a decision" while a lawsuit is pending). Because

Dluhos failed to serve properly either the Strasberg defendants or the CMG defendants, CMG formally requested in August 2000 that the NAF lift the suspension order and proceed with UDRP dispute resolution. NAF lifted the order when CMG served notice of its request on Dluhos and paid a $150 fee to remove the suspension order.

On October 26, 2000, the NAF panel issued a decision against Dluhos -- without his participation -- and directed that the domain name <www.leestrasberg.com> be transferred to the Estate. See UDRP S 5(e) (mandating that the panel "decide the dispute based upon the complaint" if a registrant declines to participate in the UDRP proceedings).

Dluhos filed an amended complaint in the district court on October 31, 2000, alleging harassment, breach of contract, and violations of his First, Fifth and Fourteenth Amendment rights. Essentially, he challenged the constitutionality of the dispute resolution process, raised First Amendment arguments against enforcement of NSI's dispute resolution policy and asked the district court to restore his right in the domain name <www.leestrasberg.com>. All defendants promptly filed motions to dismiss for failure to state a claim, and in an August 31, 2001 memorandum and order, the district court granted the defendants' motions. After dismissing all constitutional and S 1983 claims against the defendants for want of state action, the district court dismissed the various state law claims against all parties for failure to state a claim for which relief may be granted.

The court then proceeded to review the NAF 's decision in favor of the Strasberg and CMG defendants under: 1) 9 U.S.C S 10(a)(2)-10(a)(3) of the Federal Arbitration Act, which authorizes a district court to vacate an arbitration decision if there is "evident partiality or corruption in the arbitrator[ ]," or if "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy"; and 2) the judicially created"manifest disregard of the law" standard, which allows a district court

to vacate an arbitration award that "evidences manifest disregard of the law rather than an erroneous interpretation." See Local 863 Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Jersey Coast Egg Producers, Inc., 773 F.2d 530, 533 (3d Cir. 1985) (trotting out the standard but holding that a union arbitration judgment did not rise to the level of "manifest disregard"). The district court reviewed and upheld the NAF 's decision under both deferential standards.

Dluhos filed a timely Notice of Appeal.

II.

We review a district court's denial of a motion to vacate a commercial arbitration award de novo. Kaplan v. First Options, 19 F.3d 1503, 1509 (3d Cir. 1994). We also note that because Dluhos has filed his complaint pro se, we must liberally construe his pleadings, and we will apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name. Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (internal quotations omitted).

III.

The Federal Arbitration Act explicitly permits the use of arbitration and specifically authorizes individuals in commercial transactions to contract for arbitration. 9 U.S.C. SS 1-10. Congress enacted the FAA in 1925 to offset the "hostility of American courts to the enforcement of arbitration agreements." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001). As the FAA evinces the"liberal federal policy favoring arbitration," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), the legislation "compels judicial enforcement of a wide range of written arbitration agreements." Circuit City , 532 U.S. at 111.

Federal courts primarily invoke the FAA to give effect to contracting parties' expectations for resolving disputes. Accordingly, the FAA revolves around contract interpretation. See Harrison v. Nissan Motor Corp., 111 F.3d

7

343, 350 (3d Cir. 1997) ("[A]rbitration is creature of contract, a device of the parties rather than the judicial process. If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration.") (quoting AMF Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (E.D.N.Y. 1985) (Weinstein, J.)). Because the FAA does not define the term "arbitration," "courts and commentators have struggled to do so." Harrison, 111 F.3d at 350. Broadly, this Court has essentially concluded that "the essence of arbitration . . . is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, i.e. to an award made by a third-party arbitrator. Arbitration does not occur until the process is completed and the arbitrator makes a decision." Id. at 350.

Admittedly, this definition does little to assist us in determining which types of dispute resolution fall under the FAA and which do not. The Court of Appeals for the Fourth Circuit has distinguished "mandatory arbitration, as a prerequisite to litigation" from "binding arbitration, where the parties must accept an award or decision of the arbitrator." United States v. Bankers Ins. Co., 245 F.3d 315, 322 (4th Cir. 2001). But the real debate has occurred "in the context of whether the FAA applies to nonbinding arbitration[.]" Harrison, 111 F.3d at 350. Although the precise identity of nonbinding arbitration is itself perhaps no less murky than the definition of "arbitration" under the

FAA, we have previously looked to Judge Weinstein's discourse in AMF, Inc. v. Brunswick Corp., 620 F. Supp. 456 (E.D.N.Y. 1985), for guidance. Judge Weinstein did not contend that the FAA applies to all forms on nonbinding arbitration, but he looked to S 2 of the FAA, which states that the FAA applies to "contracts . . . to settle disputes by arbitration." 9 U.S.C. S 2. Accordingly, Judge Weinstein centered the inquiry for a classification of nonbinding arbitration on "whether the arbitration at issue . . . might realistically settle the dispute." Harrison , 111 F.3d at 349. In his eyes, then, a dispute-resolution mechanism would fall under the FAA if "viewed in light of the reasonable commercial expectations the dispute will be settled by this arbitration." Id. (quoting AMF, 620 F. Supp. at 461)). By way of an example, a lawsuit that halts in a "stay . . . so

8

that arbitration can be had" before litigation may proceed means that a dispute-resolution proceeding constitutes "arbitration." 9 U.S.C. S 3; see also Parisi v. Netlearning, Inc., 139 F. Supp. 2d 745, 751 (E.D. Va. 2001) ("[T]here is no reason to 'stay' litigation under S 3[where a proceeding] contemplates parallel litigation.").

If a dispute-resolution mechanism indeed constitutes arbitration under the FAA, then a district court may vacate it only under exceedingly narrow circumstances. 9 U.S.C. S 10. It may vacate it where there is "evident partiality or corruption in the arbitrator[ ]," or because "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. SS 10(a)(2)-10(a)(3). A district court may also vacate an arbitrator's decision where the arbitrator's decision "evidence[s] a manifest disregard for the law rather than an erroneous interpretation of the law." Local 863 Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Jersey Coast Egg Producers, Inc., 773 F.2d 530, 534 (3d Cir. 1985). The net result of a court's application of this standard is generally to affirm easily the arbitration award under this extremely deferential standard -- a result that is squarely in line with the purpose behind the FAA where courts are tasked with reviewing an arbitration decision.

If, however, a dispute-resolution mechanism does not constitute arbitration under the FAA, then a district court has no jurisdiction to review the result absent an independent jurisdictional hook. See Roadway Package Sys. v. Kaiser, 257 F.3d 287, 291 n.1 (3d Cir. 2001) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. , 460 U.S. 1, 25 n.32 (1983) (explaining that the FAA does not independently provide federal jurisdiction); Harrison, 111 F.3d at 352 (dismissing a request for lack of appellate jurisdiction, where the dispute resolution proceeding did not constitute arbitration under the FAA).

At issue before us then is whether the nonbinding domain name resolution policy (UDRP) proceeding that

shifted Appellant's registered domain name to the Strasberg defendants constitutes arbitration under the FAA. If this proceeding qualifies as arbitration under the FAA, then the

9

dispute resolution is subject to extremely limited review. If it does not fall under the FAA umbrella, then the district court lacked jurisdiction to examine -- and thus to affirm -- the result under the lax FAA review standards.

IV.

We begin our analysis of the FAA's applicability by examining the specific arbitration agreement at issue, a contract-based arrangement for handling disputes between domain name registrants and third parties who challenge the registration and use of their trademarks. In our view, the UDRP's unique contractual arrangement renders the FAA's provisions for judicial review inapplicable.

A.

First, the UDRP obviously contemplates the possibility of judicial intervention, as no provision of the policy prevents a party from filing suit before, after or during the administrative proceedings. See UDRP S 4(k) (stating that domain-name resolution proceedings shall not stop either party from "submitting the dispute to a court of competent jurisdiction for independent resolution"); Sallen v. Corinthians Licenciamentos Ltda., 273 F.3d 14, 26 (1st Cir. 2001) (discussing the likelihood that the "judicial outcome will override the UDRP one"). In that sense, this mechanism would not fall under the FAA because "the dispute will [not necessarily] be settled by this arbitration." Harrison, 111 F.3d at 349. (quoting AMF, 620 F. Supp. at 461)).

The UDRP was intended to ensure that the parties could seek independent judicial resolution of domain name disputes, regardless of whether its proceeding reached a conclusion. See World Intellectual Property Organization, The Management of Internet Names and Addresses: Intellectual Property Issues: Final Reporter of the WIPO Internet Domain Name Process 139, 150(iv), at http:// wipo2.wipo.int/process1/report/finalreport .html (Apr. 30, 1999) (remarking that the parties should be permitted to seek "de novo review" of a UDRP-based dispute resolution); see also Sallen, 273 F.3d at 26 (affording independent complete review of a UDRP proceeding rather than

10

addressing it under the FAA); Weber-Stephen Prods. Co. v. Armitage Hardware & Bldg. Supply, Inc., 2000 U.S. Dist LEXIS 6335 (N.D. Ill. May 3, 2000) (concluding that the UDRP takes account of the possibility of parallel litigation in federal court, and that federal courts are "not bound by the outcome of the administrative proceedings").

Indeed, unlike methods of dispute resolution covered by the FAA, UDRP proceedings were never intended to replace formal litigation. See Parisi, 139 F. Supp. 2d at 752 (citing the FAA's requirement that parties to arbitration"agree[ ] that a judgment of the court shall be entered upon the award made pursuant to the arbitration," 9 U.S.C.S 9, and noting the absence of such an agreement in the UDRP); David E. Sorkin, Judicial Review of ICANN Domain Name Dispute Decisions, 18 SANTA CLARA COMPUTER & HIGHTECH L.J. 35, 51-52 (2001) ("Unlike conventional arbitration, the UDRP is not meant to replace litigation, but merely to provide an additional forum for dispute resolution, with an explicit right of appeal to the courts."). Rather, the UDRP contemplates truncated proceedings. It "is fashioned as an 'online' procedure administered via the Internet," Parisi, 139 F. Supp. 2d at 747, which does not permit discovery, the presentation of live testimony (absent exceptional circumstances), or any remedy other than the transfer or cancellation of the domain name in question. See  UDRP S 4(i); David H. Bernstein, The Alphabet Soup of Domain Name Dispute Resolution: The UDRP and ACPA, 716 PLI/Pat 251, 299-300 (2002).

To shove Dluhos' square-peg UDRP proceeding into the round hole of the FAA would be to frustrate this aim, as judicial review of FAA-styled arbitration proceedings could be generously described only as extremely deferential.

B.

Second, because the trademark holder or the trademark holder's representative is not required to avail itself of the dispute resolution policy before moving ahead in the district court, these proceedings do not qualify as the type that would entail a court's compelling party participation prior to independent judicial review -- thus removing the

11

proceeding from the warmth of the FAA blanket. UnderS 4 of the FAA, a district court may "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. S 4. Although "[s]ome courts, relying in part on their inherent equitable powers, have stayed litigation and compelled participation in non-binding procedures so long as there are 'reasonable commercial expectations' that the procedures would'settle' disputed issues," Parisi, 139 F. Supp. 2d at 750 n.10 (quoting AMF, 621 F. Supp. at 460-461), a UDRP proceeding settles a disputed proceeding only to the extent that a season-finale cliffhanger resolves a sitcom's storyline -- that is, it doesn't. It is true that the language of the resolution policy describes the dispute-resolution process as "mandatory," but "the process is not'mandatory' in the sense that either disputant's legal claims accrue only after a panel's decision." Parisi, 139 F. Supp. 2d at 751 (quoting Bankers Ins. Co., 245 F.3d at 319). Only the domain-name registrant is contractually obligated to participate in the

proceeding if a complaint is filed. Even then, the panel may "decide the dispute based on the complaint" if the registrant declines to participate. UDRP S 5(e). That Dluhos could do precisely that by eschewing the NAF proceeding and filing suit in district court only demonstrates the dispute resolution policy's outcome's relative hollowness. Indeed, it is not the district court litigation that could be stayed pending dispute resolution, but rather the dispute-resolution mechanism itself. See UDRP S 18 (giving arbitration panel "the discretion to decide whether to suspend or terminate the administrative proceeding, or to proceed to a decision" while a lawsuit is pending). And that is exactly what the NAF panel did.

C.

The bottom line is that a registrant who loses a domain name to a trademark holder "can effectively suspend [a] panel's decision by filing a lawsuit in the specified jurisdiction and notifying the registrar in accordance with [UDRP S 4(k)]." Parisi, 139 F. Supp. 2d at 752. From that provision, it is evident that the UDRP provides" 'parity of appeal,' affording a 'clear mechanism' for 'seeking judicial

review of a decision of an administrative panel canceling or transferring the domain name.' " Id. (quoting ICANN, Staff Report on Implementation Documents for the Uniform Dispute Resolution Policy (Sept. 29, 1999)).

Accordingly, we hold that UDRP proceedings do not fall under the Federal Arbitration Act. More specifically, judicial review of those decisions is not restricted to a motion to vacate arbitration award under S 10 of the FAA, which applies only to binding proceedings likely to "realistically settle the dispute." The district court erred in reviewing the domain name proceeding under limitations of FAA standards.

V.

Because the UDRP -- a private covenant -- cannot confer federal jurisdiction where none independently exists, the remaining question is whether the Congress has provided a cause of action to challenge its decisions. In the Anticybersquatting Consumer Protection Act, we hold that it has.

The ACPA, 15 U.S.C. S 1114(2)(D)(v), "provide[s] registrants . . . with an affirmative cause of action to recover domain names lost in UDRP proceedings." Sallen, 273 F.3d at 27. Under this modern amendment to the Lanham Act, a registrant whose domain name has been "suspended, disabled, or transferred" may sue for a declaration that the registrant is not in violation of the Act, as well as for an injunction returning the domain name. 15 U.S.C. S 1114(2)(D)(v). Congress' authorization of the federal courts to "grant injunctive relief to the domain name

registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant" gives the registrant an explicit cause of action through which to redress the loss of a domain name under the UDRP. Id.

Once again, we must liberally construe the pro se litigant's pleadings, and we will apply the applicable law, irrespective of whether he has mentioned it by name. Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (internal quotations omitted). Although Dluhos did not expressly

13

invoke the ACPA, his allegations and demand for the return of the domain name can reasonably be construed as such a request; Dluhos' end goal is the return of <www.leestrasberg.com> to him, bringing his cause of action squarely under the ACPA. Dluhos is a registrant, and the domain name has been transferred to the Strasberg defendants via a complaint by the CMG defendants and resulting arbitration.

Accordingly, as to the CMG and Strasberg defendants, we will reverse and remand the case for further proceedings consistent with this opinion. This decision in no way reflects an intimation that the NAF panel erred in its judgment, but merely that UDRP resolutions do not fall under the limited judicial review of arbitrators of the FAA.

VI.

As to the remaining claims, this Court will affirm the dismissal of the constitutional claims against all parties -- including, inter alia, Appellee Network Solutions, Inc. -- for want of state action and for failure to state a claim for which relief may be granted, as well as the state law claims against all parties. We adopt the reasoning of the district court in this regard. Appendix at 7-23. We need not address Dluhos' claims of antitrust and federal labor law violations, as he has raised them for the first time on this appeal. See Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994) ("This court has consistently held that it will not consider issues that are raised for the first time on appeal.").

VII.

We have considered all contentions presented by the parties and conclude that no further discussion is necessary.

We will reverse that portion of the district court's judgment against the Strasberg and CMG defendants that affirms the NAF-driven UDRP proceeding under FAA standards, and remand with a direction that the court review the dispute-resolution award de novo under the

14

Anticybersquatting Consumer Protection Act. We will affirm that portion of the district court's judgment that dismissed all remaining claims against all parties.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit