**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.**

**v.**

**Michael CLEMENTE; Geraldine Waskevitch formerly known as Geraldine Clemente, Appellants.**

No. 07–1021.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 6, 2008.

Filed: March 31, 2008.

G. Jeffrey Boujoukos, Morgan, Lewis & Bockius, Philadelphia, PA, Robert A.

White, Morgan, Lewis & Bockius, Princeton, NJ, for Merrill, Lynch, Pierce, Fenner & Smith, Inc.

Michael S. Kasanoff, Red Bank, NJ, for Appellants.

Before: FISHER, GREENBERG and ROTH, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Michael Clemente and Geraldine Waszkiewicz ("the plaintiffs") appeal the District Court's order, which denied their motion to vacate an arbitration award, and instead confirmed the award. The arbitration award dismissed the plaintiffs' claims against Kevin Nohilly, Gustav Albert Fingado, and Merrill Lynch, Pierce, Fenner & Smith, Inc. ("the defendants"), and denied them any relief. For the reasons set forth below, we will affirm the order of the District Court.

### I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

The plaintiffs held accounts with Merrill Lynch at its Freehold, New Jersey office. Kevin Nohilly, a Financial Advisor for Merrill Lynch, initially advised both of the plaintiffs. However, after the plaintiffs divorced in 2000, they split their assets and Clemente sought the advice of Gus Fingado, the Resident Manager of the Freehold office, while Waszkiewicz continued to use Nohilly's services.

On January 29, 2004, the plaintiffs filed a Statement of Claim with the National Association of Securities Dealers, Inc. ("NASD"), alleging that the defendants had violated tort law,[1] contract law,[2] and New Jersey criminal law,[3] in their dealings with the plaintiffs. These claims stem from an alleged "stop-loss order" that would have bound Nohilly, and later Fingado, to either liquidate or convert the plaintiffs' investments if the value of the investments dropped by a certain percentage.

The parties agreed to resolve the matter in an arbitration proceeding under the NASD using a panel of three arbitrators. Between May and August 2006, the panel conducted a fourteen-day arbitration hearing. On August 7, 2006, the panel issued their award, dismissing the plaintiffs' claims, denying all relief to the plaintiffs, and assessing the fees each party must pay. The defendants filed a motion with the United States District Court for the District of New Jersey, seeking to confirm the award. The plaintiffs filed a cross motion, seeking to vacate the award. The District Court granted the defendants' motion to confirm the award, and denied the plaintiffs' motion to vacate the award. This timely appeal followed.

### II.

The District Court had jurisdiction under 9 U.S.C. § 9, and we have jurisdiction under 9 U.S.C. § 16(a)(1)(D). We exercise de novo review over the District Court's

---

1. The plaintiffs alleged that the defendants had engaged in fraud, equitable fraud, negligent misrepresentation, breach of a fiduciary duty, negligence, negligence in violating the rules of the New York Stock Exchange, and negligence in violating the rules of the NASD.

2. The plaintiffs alleged that the defendants had breached their contract, their implied contract, and their quasi-contract.

3. The plaintiffs alleged that the defendants had violated New Jersey law by engaging in racketeering.

denial of a motion to vacate an arbitration award. *Dluhos v. Strasberg,* 321 F.3d 365, 369 (3d Cir.2003). Our review of the arbitrator's decision, however, is "extremely deferential." *Id.* at 370. "The net result . . . is generally to affirm easily the arbitration award." *Id.*

## III.

### A.

■ The plaintiffs argue that the District Court erred in denying the motion to vacate the arbitration award because the panel of arbitrators were corrupt and biased in violation of the Federal Arbitration Act ("FAA").[4] The FAA permits a court to vacate the award "(1) where the award was procured by corruption, fraud, or undue means; [or] (2) where there was evident partiality or corruption in the arbitrators, or either of them[.]" 9 U.S.C. § 10(a). Thus, "[v]acatur is appropriate only in 'exceedingly narrow' circumstances[.]" *Metromedia Energy, Inc. v. Enserch Energy Servs.,* 409 F.3d 574, 578 (3d Cir.2005).

In demonstrating bias, we require a showing of "evident partiality," meaning that "the challenging party must show a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration." *Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1523 n. 30 (3d Cir.1994) (internal quotation marks and citation omitted). Moreover,

"evident partiality is strong language and requires proof of circumstances powerfully suggestive of bias." *Id.* (internal quotation marks and citation omitted).

The instances that the plaintiffs cite as demonstrating the arbitrator's bias do not rise to the level of demonstrating "evident partiality." First, the plaintiffs argue that the defendants' counsel and one of the arbitrators had an exchange in which counsel gave the arbitrator an empty binder, and the two joked that cash was inside the binder. The joke, while not in the best judgment of either the arbitrator or counsel, does not "powerfully suggest[ ]" that the arbitrator was so biased that he could not render a fair decision, especially considering that it was clearly a joke that was heard by everyone at the hearing. Second, the plaintiffs allege that the same arbitrator and Merrill Lynch personnel had ex parte communications, and argue that the arbitrator "likely determined . . . that they were really 'a bunch · of nice guys,'" passed these sentiments on to the fellow panelists, and the three panelists decided to find in the defendants' favor as a result. This argument is, at best, speculative, and is far too tenuous for a reasonable person to conclude that the three panelists were biased in favor of the defendants. Finally, the plaintiffs allege that the same arbitrator possibly communicated with a Smith Barney executive regarding this arbitration because, when the plaintiffs contacted the executive, he stated that

---

4. The defendants argue that the plaintiffs waived their right to argue that the arbitrators were biased because they did not raise their objections to the arbitrators, and in fact, thanked the arbitrators for conducting the proceedings. Other Courts of Appeals would agree that the plaintiffs have waived this argument. *See Marino v. Writers Guild of Am.,* 992 F.2d 1480, 1484 (9th Cir.1993) ("[A] party may not sit idle through an arbitration procedure and ·then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse. . . . This rule even extends to questions, such as arbitrator bias, that go to the very heart of arbitral fairness." (internal citation omitted)); *see also Brook v. Peak Intern., Ltd.,* 294 F.3d 668, 674 (5th Cir.2002); *United Food & Comm. Workers v. Marval Poultry Co.,* 876 F.2d 346, 352 (4th Cir.1989). While we have never published an opinion on this specific point, we find it unnecessary to decide whether the argument has been waived in this case.

he was aware that the arbitrator was on this panel. They argue that this alleged communication constituted witness tampering. However, the plaintiffs have offered no proof as to how the executive knew the identity of the arbitrator; thus, any theory is once again speculative, and even if it were true, the contact involved one arbitrator, not the panel. Moreover, Mr. Clemente testified that the executive's reason for not serving as a witness for the plaintiffs was because he served on other arbitration panels, not because of any contact with the arbitrator, thus negating any suggestion of witness tampering.

Based on the foregoing, we cannot "conclude that the [panel of] arbitrator[s] w[ere] partial to the other party to the arbitration." *Kaplan,* 19 F.3d at 1523 n. 30. Therefore, we cannot vacate the arbitration award because the evidence does not demonstrate that the arbitrators were corrupt or biased.[5]

### B.

The plaintiffs also argue that the District Court erred in denying the motion to vacate the arbitration award because the panel of arbitrators "manifestly disregarded the law." We have stated that one of the "exceedingly narrow circumstances" in which vacatur is appropriate includes "where an arbitration panel manifestly dis-

regards, rather than merely erroneously interprets, the law." *Metromedia Energy,* 409 F.3d at 578.

The plaintiffs argue that they presented the panel with a document that was "the equivalent of a smoking gun," and as a result, any decision other than one in favor of the plaintiffs demonstrated a "manifest disregard" of the laws of negligence and fraud. However, the authenticity of this document, which was a fax on Merrill Lynch's letterhead discussing the plaintiffs' instructions regarding their "stop-loss" order, was a contested issue during the arbitration proceedings. Thus, the panel's decision did not demonstrate that it made a choice to manifestly disregard the law, but instead only that it made a choice not to credit a document as authentic. This question was one of fact, not of law, and therefore, we cannot find that the panel manifestly disregarded the applicable laws of negligence and fraud.[6]

### C.

The plaintiffs argue that the panel's award of forum fees against the plaintiffs is invalid because it is unconscionable. Although the FAA demonstrates a "liberal federal policy favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (citation and

---

5. The plaintiffs further argue that the District Court erred in denying the plaintiffs' request to conduct discovery on these matters. We review the District Court's denial of discovery for an abuse of discretion. *Brumfield v. Sanders,* 232 F.3d 376, 380 (3d Cir.2000). In the present case, plaintiffs' counsel admitted to the District Court that he thought it was "highly unlikely" that the arbitrator engaged in misconduct, but argued that because it was not "impossible," he should be allowed to conduct discovery. The District Court concluded that the plaintiffs' assertions of misconduct were unsupported, and there was no appearance of impartiality on the part of the

arbitrators. We cannot conclude that the District Court abused its discretion in choosing not to permit discovery, particularly considering that plaintiffs' counsel even admitted that it was "highly unlikely" that an impropriety actually occurred.

6. The plaintiffs further argue that the panel's manifest disregard for the applicable law resulted in a violation of several public policies, including the public policy of protecting investors. However, because the panel did not manifestly disregard the law, we find these arguments unavailing.

internal quotation omitted), a provision of an arbitration agreement "may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract.'" *Southland Corp. v. Keating,* 465 U.S. 1, 10–11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (quoting 9 U.S.C. § 2). Thus, a court may invalidate an arbitration provision using the "generally recognized contract defense[ ] . . . [of] unconscionability." *Delta Funding Corp. v. Harris,* 189 N.J. 28, 912 A.2d 104, 111 (2006) (citing *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). In *Harris,* the Supreme Court of New Jersey held that, in a contract of adhesion, a "cost-shifting" provision that permits the arbitrator to allocate the entire cost of arbitration to a consumer would be unconscionable if the arbitrator interprets and applies the provision in that manner. 912 A.2d at 111–13.

The present case is distinguishable from *Harris* in two ways. First and foremost, the contract in the present case is not one of adhesion. A contract of adhesion is "presented to the public on standardized printed forms, on a take-it-or-leave-it basis without opportunity for purchasers to negotiate any of the terms." *Rudbart v. North Jersey Dist. Water Supply Comm'n,* 127 N.J. 344, 605 A.2d 681, 686 (1992). Here, the plaintiffs chose to submit their claim with the NASD, seeking an NASD arbitration; the plaintiffs were not bound to arbitration "on a take-it-or-leave-it basis." Thus, the decision in *Harris,* which applied to contracts of adhesion, would not apply to the present case. However, even if *Harris* did apply, the present case is distinguishable because the panel of arbitrators did not interpret or apply the provision to shift all of the costs to the plaintiffs. Instead, the panel assigned only fifty-two percent of the forum fees to the plaintiffs. Therefore, the panel's award of forum fees to the plaintiffs based on the arbitration provision was not unconscionable.[7]

## IV.

We have considered the parties' remaining arguments and find them without merit. For these reasons, we will affirm the order of the District Court.

---

7. The plaintiffs make two additional arguments as to the forum fees, but both are unavailing. First, the plaintiffs argue that the forum fees were not part of their submission to NASD arbitration. However, they chose to submit their claims to NASD arbitration, and the NASD arbitration rule specifically states that "[t]he arbitrators, in their awards, shall determine the amount chargeable to the parties as forum fees and shall determine who shall pay such forum fees." NASD Rule 10332(c). Thus, the plaintiffs were on notice that the panel could assess forum fees against the plaintiffs.

Second, the plaintiffs argue that the panel could not assess forum fees against the plaintiff's custodial accounts because the plaintiffs had withdrawn the claims regarding those accounts. However, although the arbitration award names the custodial accounts in discussing the "claimants," it subsequently states that the plaintiffs withdrew these claims, and does not indicate that it was assessing any costs regarding these claims. Therefore, we cannot find that the panel erroneously assessed the forum fees.