**REMOTE SOLUTION CO., LTD., Appellant**

v.

**FGH LIQUIDATING CORP., formerly known as Contec Corporation.**

**No. 08–3662.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 8, 2009.

Filed: Oct. 2, 2009.

David L. Finger, Esq., Finger, Slanina & Liesbesman, Wilmington, DE, for Appellant.

Paul E. Crawford, Esq., Connolly, Bove, Lodge & Hutz, Wilmington, DE, Kenneth

---

L. Stein, Esq., Stroock, Stroock & Lavan, New York, NY, for FGH Liquidating Corp., formerly known as Contec Corporation.

Before: SCIRICA, Chief Judge, RENDELL and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

Remote Solution Co., Ltd. appeals from the District Court's denial of its motion to vacate or modify an arbitral award. The underlying dispute involves an agreement between Remote Solution and Contec Corporation.[1] The arbitrator determined Remote Solution had agreed to defend and indemnify Contec against certain patent infringement claims brought by third parties and awarded damages to Contec, as well as fees and costs. The District Court denied Remote Solution's motion to vacate or modify the arbitral award and entered judgment for Contec. We will affirm.

### I.

Remote Solution is a Korean electronics manufacturer. In February 1999, it entered into a Manufacturing and Purchase Agreement ["Agreement"] with Contec, a Delaware corporation with its principal place of business in New York. Contec sold remote-control devices to consumers and cable television providers. The agreement governed the production and sale of such devices according to specifications provided to Remote Solution by Contec. Section 3(c) of the Agreement states that Remote Solution would defend certain suits against

Contec and indemnify Contec against damages:

> Seller shall defend any suit or proceeding brought against Purchaser to the extent that such suit or proceeding is based on a claim that the Products constitute an infringement of any valid United States or foreign patent, copyright, trade secret or other intellectual property right and Seller shall pay all damages and costs awarded by final judgment against Purchaser.

One of the devices Contec purchased under the agreement was the RT–U49C. Contec sent specifications for the device and placed an order in the spring of 2000. About two years later, Universal Electronics, Inc. ("UEI") sued Contec for patent infringement in the United States District Court for the District of Delaware, claiming the RT–U49C infringed its patents. The parties settled in May 2002. That same year, Philips Electronics North America and U.S. Philips Corporation (collectively "Philips") sued Contec, also in the United States District Court for the District of Delaware, claiming the RT–U49C infringed its patents.[2] In June 2003, Contec and another defendant entered into a Consent Judgment and Order stating they infringed two Philips patents. Contec incurred fees and costs in its defense against both patent-infringement claims. In resolution of the claims, it paid a settlement and royalties to both UEI and Philips.

Remote Solution's failure to defend and indemnify Contec against the UEI and Philips actions prompted Contec to withhold payment from Remote Solution for devices shipped in January 2003. In June

---

1. Prior to this dispute, Remote Solution Co., Ltd. was Hango Electronics Co., Ltd. During the dispute, Contec changed its corporate name to FGH Liquidating Corp. Throughout this opinion, we refer to the parties and their predecessor and successor corporations as Remote Solution and Contec, respectively.

2. Philips also named Compo Micro Tech, Inc. and Seoby Electronics, two other Contec suppliers, along with Remote Solution as defendants in the suit.

2003, Remote Solution filed a complaint in Korean court, seeking payment for the devices. In response, Contec demanded arbitration with the American Arbitration Association under Section 19 of the Agreement,[3] and subsequently filed a motion in the United States District Court for the Northern District of New York to compel arbitration. The arbitrator determined it had standing to hear the dispute, the New York court entered judgment confirming the arbitrator's standing,[4] and the parties proceeded to arbitrate their dispute.

In arbitration, Remote Solution claimed the indemnification provision did not apply because Contec's own specifications had caused the patent infringement. The arbitrator, however, concluded Remote Solution had agreed to indemnify Contec in Section 3(c) of the Agreement regardless of whether Contec provided its own specifications. That provision, moreover, displaced N.Y. U.C.C. § 2–312(3), which "[u]nless otherwise agreed," would require a buyer who furnishes specifications to hold the seller harmless against claims "aris[ing] out of compliance with the speci-

fications."[5] The arbitrator ordered Remote Solution to pay Contec $482,067.50. This figure represents $1,102,105.50, which Remote Solution owes Contec under section IV(G) of the Arbitrator's damages award, reduced by $620,038, the amount Contec withheld from Remote Solution for devices shipped in January 2003. Of the total amount, $295,833 represents Remote Solution's share of the Philips and UEI settlement and royalties;[6] $270,206.32 is for Contec's attorneys' fees and expenses in the Philips and UEI actions; $304,099.57 represents Contec's fees and costs in the Korean and New York actions, which the arbitrator determined were "clearly incurred in the conduct of this arbitration;" and $231,966.62 is for Remote Solution's share of Contec's fees and expenses associated with the arbitration itself.

Remote Solution filed a motion to vacate or modify the arbitral award in the United States District Court for the District of Delaware. The District Court denied the motion, and entered judgment for Contec.[7] Remote Solution appeals.[8]

---

3. Section 19 of the Agreement states: "In the event of any controversy arising with respect to this Agreement ... such controversy shall be determined by arbitration ... in accordance with the Commercial Arbitration Rules of the American Arbitration Association...."

4. *Contec Corp. v. Remote Solution Co.*, No. 1:03–CV–910, 2003 WL 25719933 (N.D.N.Y. Dec. 2, 2003), *aff'd*, 398 F.3d 205 (2d Cir. 2005).

5. The parties agree the contract is governed by New York law.

6. Remote Solution was only one of multiple companies that supplied devices to Contec. The $295,833 award to Contec represents Remote Solution's pro-rata share of the patent-infringement settlements and royalties.

7. The District Court also ordered Remote Solution to remit to Contec 75% of its administrative costs and fees incurred in arbitration, and 25% of the arbitrator's fee under section

IV(I) of the Arbitrator's damages award. We assume the District Court mistakenly ordered 25% of the arbitrator's fee to be remitted to Contec, as opposed to the 75% stated in the aforementioned section of the Arbitration damages award. We correct this typographical error; accordingly, Remote Solution shall remit to Contec 75% of its administrative costs and fees and 75% of the arbitrator's fee.

8. The District Court had jurisdiction under 28 U.S.C. § 1332. Although the case was initially dismissed for failure to meet the amount-in-controversy requirement, Remote Solution filed a renewed motion to vacate or modify the award. The renewed motion asserted claims involving the arbitral award that were not certainly less than the amount-in-controversy threshold. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."); *Columbia Gas Transmission*

## II.

Review of arbitration awards under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, is "extremely deferential." *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 578 (3d Cir. 2005). We may disturb the award only when the arbitrator is "partial or corrupt" or "manifestly disregards, rather than merely erroneously interprets the law." *Id.*[9] Additionally, we may refuse to enforce an award that violates law or a "well-defined and dominant" public policy. *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir.1993). "[A] court's refusal to enforce an arbitrator's interpretation of [a] contract[ ] is limited to situations where the contract as interpreted would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) (internal quotation marks omitted)).

■ Remote Solution challenges the arbitrator's determination that it had agreed to defend and indemnify Contec against patent claims like the UEI and Philips claims. Remote Solution contends the award violates public policy because the arbitrator's interpretation of the contract did not comport with proper principles of contract interpretation.[10] (Br. of Appellant at 16) (citing *Sweeney v. Hertz Corp.*, 292 A.D.2d 286, 740 N.Y.S.2d 19, 21 (N.Y.A.D. 1st Dep't 2002) (requiring an indemnity provision in a car-rental contract to "clearly and unequivocally express an intent to indemnify [the rental company] against its own negligence")). This argument suggests the arbitrator misconstrued the contract,[11] not that the contract "as interpreted," *see Misco*, 484 U.S. at 43, 108 S.Ct. 364, would violate a well-defined and dominant public policy. Remote Solution's argument is that the arbitrator committed legal error, but this is not a sufficient basis to determine the award violates public policy.

Remote Solution additionally contends the arbitrator manifestly disregarded the law twice in its award of attorneys' fees. First, it contends the arbitrator should have limited the award of attorneys' fees and costs to the fees and costs it expended. Section 19 of the Agreement entitles the prevailing party "in any [arbitration] ... to recover from the other party all of its expenses, including, without limitation ... its attorney's fees incurred in the conduct

---

*Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995). We have jurisdiction to review the appeal from a final judgment under 28 U.S.C. § 1291.

9. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The typical result, which is "to affirm easily the arbitration award," is consistent with the purpose behind the FAA. *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir.2003).

10. The District Court concluded the arbitrator's decision did not "constitute a 'manifest disregard for the law.'" *Remote Solution Co. v. FGH Liquidating Corp.*, 568 F.Supp.2d 534, 542–43 (D.Del.2008). On appeal, Remote Solution only challenges the interpretation of the contract on public policy grounds.

11. We do not address whether this contention is correct, but note that the District Court determined the arbitrator had not manifestly disregarded the law because the cases Remote Solution relies upon do not clearly govern patent-infringement indemnification clauses in New York.

of such arbitration but in no event will the recovery of its attorney's fees be in excess of the actual cost of the other party's attorney's fees." In the arbitration, Contec reported $231,966.62 of fees, compared to only $13,581.11 of fees for Remote Solution.[12]

 The arbitrator acknowledged the contractual limitation on fees, but explained "it is equally plain ... that Remote Solution has breached its obligation of good faith and fair dealing...." Remote Solution's fees were "unreasonably" and "inexplicably" low,[13] the arbitrator determined, and the "unusually low billings here cannot provide a basis for negating the spirit of section 19" because Remote Solution had "arrang[ed] for the losing party's attorney's fees and expenses to approach zero." [14] The arbitrator considered the contractual limitation as well as the good faith and fair dealing claims. By "construing or applying the contract and acting within the scope of his authority," *Misco,*

484 U.S. at 38, 108 S.Ct. 364, the arbitrator did not manifestly disregard the law.

Remote Solution's second argument is likewise unavailing. It contends under New York law that the provision in Section 19 does not allow for recovery of pre-arbitration attorneys' fees and costs because it does not "unmistakably" address these costs. But the arbitrator considered the language of the contract and determined these fees and costs were "incurred in the conduct of [the] arbitration." Its determination was not in manifest disregard of the law.[15]

For the foregoing reasons we will affirm the judgment of the District Court and remand for a determination of pre-judgment interest.[16]

---

12. Remote Solution also contends the limitation on fees applies to the New York action. In that action, it incurred $54,273.75 of costs, and Contec spent $288,779.30.

13. Contec had cited to more than thirty instances where Remote Solution's counsel did not bill for its time.

14. As noted, the arbitrator awarded $231,966.62 for fees incurred in arbitration, even though Remote Solution claims to have incurred only $13,581.11. And the arbitrator awarded Contec an additional $288,779.30 for its fees in the New York action, although Remote Solution claims it only incurred $54,273.75 in that action.

15. Contec has also filed a motion for damages under Federal Rule of Appellate Procedure 38. We will deny this motion. "If a court of appeals determines that an appeal is frivolous, it may ... award just damages and single or double costs to the appellee." Fed. R.App. P. 38. Damages under Rule 38 are within the discretion of the court and awarded as justice requires. *Beam v. Bauer,* 383

F.3d 106, 109 (3d Cir.2004); *Hilmon Co. (V.I.) Inc. v. Hyatt Int'l,* 899 F.2d 250, 253 (3d Cir.1990). "[A]ttorneys have an affirmative obligation to research the law and to determine if a claim on appeal [has merit]". *Beam,* 383 F.3d at 109 (internal citations omitted). The test is whether a reasonable attorney would conclude that the appeal is frivolous. *Id.*

Remote Solution's appeal to this Court, although unsuccessful, contains colorable claims. The arbitrator did not manifestly disregard the law, but some interpretative issues in the contract might have been reasonably construed in more than one way. While the arbitrator's decision receives great deference, Remote Solution's appeal is not so lacking in merit as to warrant a damages award under Rule 38.

16. Contec has renewed its request for pre-judgment interest beginning on January 25, 2006, which is the date the arbitrator ordered payment of the damages award. The District Court did not address this issue.