NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3415
_____

EGAN JONES RATINGS COMPANY,
                                                    Appellant

v.

STEVEN PRUETTE; CHRISTOPHER PRUETTE,
on behalf of Insearch Partners
_____

Appeal from the United States District Court for
the Eastern District of Pennsylvania
No. 2-16-mc-00105
District Judge: Honorable Jeffrey L. Schmehl
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 25, 2018
_____

Before: McKEE, RESTREPO, and FUENTES, *Circuit Judges*

(Filed: March 13, 2019)

_____

OPINION[*]

_____

_____

   [*] This disposition is not an Opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Appellant ("Egan") appeals the decision of the District Court denying its petition to vacate the final partial arbitration award and granting the plaintiffs' ("Pruettes") cross-petition to confirm. We will affirm the ruling of the District Court.

I.

On December 20, 1998, Egan, a Nationally Recognized Securities Rating Organization, and the Pruettes entered into an integrated contract ("1998 Agreement") granting the Pruettes, through their company InSearch Partners, the exclusive right to sell Egan's reports in exchange for the commissions on sales and the renewal of report subscriptions. When the parties entered into arbitration in February of 2016, the principal contractual dispute was whether the 1998 Agreement had expired or been terminated.[1] The termination provision of the contract was as follows:

> The term of this Agreement is two years from the date hereof unless extended by mutual agreement. Either party may end its association with the other with 90 days written notice after the end of the two year period, provided, however, that if total revenues to [Egan Jones Ratings] from sales made by [InSearch Partners], pursuant to this Agreement, exceed $300,000 during the last twelve month period of the initial term of this Agreement, then IP will have the option to extend the term for a one-year period. IP will have two additional options to renew the Agreement for one additional year each if total revenues to EJR exceeds [sic] $450,000 during the third twelve month period and $600,000 during the forth [sic] twenty month period after the date of this Agreement. . . .

---

[1] The parties stipulated that the arbitration would be bifurcated into liability and damages phases. The issue on appeal before this Court involves the arbitration decision on liability only; a separate arbitration hearing is to be held on damages.

App. 53. Through 2003, the Pruettes' sales exceeded the requisite thresholds and the contract continued intact. During 2004 and 2014, the parties exchanged numerous contract revision proposals, but never settled upon a replacement agreement. Throughout that time period, the Pruettes continued to perform their contractual duties until sometime in 2014, when Egan breached the 1998 Agreement by hiring another salesman to sell the reports in violation of the contract's exclusivity provision, and stopped making commission payments to the Pruettes.

On March 21, 2016, after conducting two days of hearings in February of 2016, the arbitrator found that the term of the 1998 Agreement was indefinite, that no new written agreement had been executed, and that Egan gave no notice of termination before breaching the contract in 2014. In making this finding, the arbitrator found that there was no credible evidence the Pruettes received Egan's putative notice of termination, allegedly dated May 10, 2006. Egan petitioned the District Court under the Federal Arbitration Act ["FAA"], 9 U.S.C. § 1, *et seq.*, to vacate the final partial arbitration award, which the District Court denied.

On appeal, Egan argues the District Court erred in concluding that the arbitrator acted competently and did not manifestly disregard the law (1) by not addressing the statute of limitations defense, (2) by interpreting the 1998 Agreement to be perpetual unless affirmatively terminated by one of the parties, and (3) by finding the Agreement was in effect until terminated by Egan in 2014. We disagree for the following reasons.

II.

3

Review of arbitration awarded under the FAA is "extremely deferential." *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 578 (3d Cir. 2005) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)). Vacatur is appropriate only in "'exceedingly narrow' circumstances, such as where arbitrators are partial or corrupt, or where the arbitration panel manifestly disregards, rather than merely erroneously interprets, the law." *Id.* (citing *Strasberg*, 321 F.3d at 370). When an arbitrator's task is to interpret the clauses of the agreement, "a reviewing court may only determine whether the arbitrator's award was totally unsupported by principles of contract construction." *Acro Polymers, Inc. v. Local 8-74*, 671 F.2d 752, 755 (3d Cir. 1982) (internal citations omitted).

Furthermore, "[t]he Supreme Court has made clear that findings of fact and inferences to be drawn therefrom are the exclusive province of the arbitrator." *Exxon Shipping Co. v. Exxon Seaman's Union ("Exxon III")*, 73 F.3d 1287, 1297 (3d Cir.1996) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *United Paperworkers Int'l Union v. Misco,* 484 U.S. at 39). It is not proper for a reviewing court to "reexamine the evidence" when reviewing an arbitration award, and errors in factfinding do not justify reversal. *Mutual Fire, Marine & Inland Ins. Co. v. Norad Reins Co., Ltd*, 868 F.2d 52, 56 (3d Cir. 1989); *accord Misco*, 484 U.S. at 36-38.

4

## III.

With regard to Egan's contention that the arbitrator erred by not ruling on the statute of limitations defense, we find that the arbitrator's predicate findings rendered such a determination irrelevant. The arbitrator interpreted the 1998 Agreement to continue beyond the initial period of two years and up until either party provided a "90 day written notice" of its intention to withdraw. App. 196. This interpretation of the termination provision falls within the bounds of the principles of contract construction and therefore must be upheld by this Court. *See NF&M Corp. v. United Steelworkers of Am.*, 524 F.2d 756, 759 (3d Cir.1975) (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969)) (only where there is a "manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.") The arbitrator found that, although Egan had the right to do so earlier, it did not provide the requisite notice until 2014. The Pruettes filed their demand for arbitration on February 6, 2015, well within the Pennsylvania statute of limitations period of four years for commencing a proceeding for breach of contract. Rather than manifestly disregarding governing Pennsylvania law, the arbitrator made factual findings that deemed the statute of limitations defense inapplicable. Egan's argument that an arbitrator must explicitly reject every potential defense, even if it is rendered moot by his own factual findings, is both practically and legally untenable.

Egan next contests the arbitrator's factual findings. In reaching the conclusion that Egan breached the 1998 Agreement in 2014, the arbitrator found no "credible

5

evidence" that the Pruettes ever received a prior notice of termination. App. 196.

Despite being not required to do so, the arbitrator supported his factual findings by citing testimony from both parties given at the February 2016 arbitration hearings. That it believed the Pruettes' testimony over Egan's version of events does not present grounds for relief. A reviewing court "is precluded from overturning an award for errors in assessing the credibility of witnesses, in the weight accorded their testimony, or in the determination of factual issues." *NF&M Corp.*, 524 F.2d at 759 (citing *Amalgamated Butchers, Local 641 v. Capitol Packing Co.,* 413 F.2d 668 (10th Cir. 1969), and *Dallas Typographical Union, No. 173 v. A.H. Belo Corp.,* 372 F.2d 577 (5th Cir. 1967)). After reviewing the record, we agree with the District Court that the arbitrator's findings were the result of a "proper weighing of conflicting evidence" and no justifiable grounds for vacating the partial final award exist. App. 16.

Egan next asserts that the arbitrator's finding that the contract was in effect until 2014 was in contravention of public policy, which discourages contracts that exist in perpetuity. But a contract that is ongoing until it is terminated by either party is not one of indefinite duration. The arbitrator interpreted the contract's plain language to encompass a means of termination, i.e., that either party can permissibly withdraw after providing a 90-day written notice. Accordingly, we agree with the District Court that public policy concerns regarding a contract of indefinite duration do not apply here. Again, because the arbitrator's interpretation of the termination provision's plain language, at the very least, "'draws its essence' from or '*arguably* construes or applies' the parties' contract," it must withstand our review on appeal. *Metromedia Energy*, 409

6

F.3d at 584 (quoting *News Am. Pub. v. Newark Typographical Union,* 918 F.2d 21, 24 (3d Cir. 1990) (emphasis in original)).

Since we have found all of Egan's contentions to be without merit, we affirm the District Court's decision to deny its petition to vacate the partial final award of the arbitration. The case is hereby returned to arbitration so that damages can be assessed.